**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 15, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL GEDDES and KARI
GEDDES, individually and as parents
and guardians of ANDREW GEDDES,
a minor child,

        Plaintiffs-Appellees,

v.

UNITED STAFFING ALLIANCE
EMPLOYEE MEDICAL PLAN;
U.S.A. UNITED STAFFING
ALLIANCE, L.L.C., a limited liability
company, and EVEREST
ADMINISTRATORS, INC., a Utah
corporation,

        Defendants-Appellants.

No. 05-4142

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:03-CV-440-PGC)**

---

D. David Lambert, (Leslie W. Slaugh, with him on the brief) Howard, Lewis &
Petersen, L.L.C., Provo, Utah, for Defendant-Appellant Everest Administrators,
Inc.

Lawrence D. Buhler, Salt Lake City Utah, for Defendant-Appellant United
Staffing Alliance, L.L.C.

Jeffrey J. Droubay (Michael L. Larson with him on the briefs) Parsons Behle &
Latimer, Salt Lake City, Utah, for Plaintiffs-Appellees.

Before **KELLY**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

Since the Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), federal courts have reviewed an ERISA health plan's denial of benefits for arbitrariness and capriciousness, so long as the plan explicitly grants discretionary authority to an administrator or other fiduciary to render benefit decisions. Now we are called upon to decide whether a fiduciary's decision to delegate part of its *Firestone* authority to an independent claims administrator triggers *de novo* review. We hold that it does not.

## I. Background

Andrew Geddes, a Utah teenager, badly damaged his spinal cord on a church-sponsored excursion to Lake Powell in the summer of 2002. On June 27, he dove into shallow water from the lake's edge and resurfaced unable to move his arms or legs. An air ambulance transported Andrew from Lake Powell to St. Mary's Hospital in Grand Junction, Colorado, where physicians determined he had severely injured his neck and spinal column. He was placed in intensive care.

On July 1, 2002, Andrew underwent surgery to repair his spine. Following the operation, Andrew remained in the intensive care unit with a halo device screwed to his skull to prevent his repaired spinal chord from slipping. He

received nourishment intravenously until he left St. Mary's for Primary Children's Hospital in Salt Lake City, Utah, on July 15, 2002.

Due to his fragile condition, Andrew's physicians at St. Mary's recommended he be transferred to Primary Children's Hospital by helicopter. But his parents' health plan, United Staffing Alliance—Defendants here—denied coverage for this mode of transport. Andrew was taken the five hours from Grand Junction to Salt Lake City by ground ambulance, and once at Primary Children's, was admitted to the neuroscience ward.

For the next two months, Andrew received in-patient care at Primary Children's Hospital. He arrived still wearing the halo apparatus, catheterized, attached to an intravenous drip, and with splints on his arms and both legs. Andrew's primary treating physician at Primary Children's, Dr. Terese Such-Neibar, diagnosed Andrew with a "C-4 asia class C spinal" injury complicated by a urinary tract infection. She recommended two months of rehabilitation, bowel and bladder treatment, medication for infectious disease, and pain control—a regimen she stated was medically necessary and typical for patients in Andrew's condition. Hospital personnel also provided Andrew with respiratory and radiological treatment until his discharge on September 10, 2002.

The Geddeses depended for healthcare coverage on the United Staffing Alliance Employee Medical Plan, in which they participated as a family through Michael Geddes' employer, United Staffing Alliance. The United Staffing Plan

(the "Plan") is an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974, "ERISA," 29 U.S.C. §§ 1001–1461. The Plan's terms are defined in the Master Plan Description. All parties agree the Plan covered Andrew as a dependent at the time of his accident and subsequent treatment. The Plan names Defendant United Staffing as both fiduciary and administrator and provides that as the fiduciary, United Staffing will engage an independent third party to review members' claims and administer all benefits. That third party is Everest Administrators, Inc., also a defendant here. Through Everest, United Staffing contracted with a network of medical care providers to offer services to plan participants at discounted contract prices. The Plan also covers care given by out-of-network providers at the "usual and customary rate as determined by the Plan." Appellees' App. at 263. Importantly, the Plan explicitly reserves to United Staffing the right to make all final decisions about benefits paid under its terms, as well as the authority to interpret disputed Plan provisions.

At Everest Administrators' direction, United Staffing ultimately covered only $40,921 of Andrew's $185,892 in medical bills. United paid less than half of the cost of Andrew's treatment at St. Mary's Hospital on the ground that the hospital's charges exceeded the "usual and customary" rate covered by the Plan. United denied almost all of Andrew's claims arising from his stay at Primary Children's Hospital in Salt Lake City as well, contending Andrew's treatment

there amounted to rehabilitation, for which the Plan imposed a $2,500 cap. In a series of letters and phone calls exchanged with Everest and Intracorp, another claims review agency employed by United Staffing, Andrew's parents disputed both United's interpretation of "usual and customary" and its characterization of their son's treatment as "rehabilitative." United Staffing insists the Plan gives it wide discretion as Plan administrator and fiduciary to interpret the document's terms. And while Everest professed in a letter to the Geddeses' attorney to "completely agree that the rehabilitation care was medically necessary," it stood by its denial of benefits based on the terms of the Plan. The Geddeses filed suit in federal district court, asserting that United Staffing's denial of benefits was improper under ERISA § 502(a)(1)(B) and (a)(3). They also alleged a breach of fiduciary duty in violation of ERISA §§ 404(a) and 502(a)(3), and a violation of § 502(c)(1)(B) due to the Defendants' failure to provide requested Plan documents. Shortly thereafter, the parties filed cross motions for summary judgment.

The district court granted summary judgment in favor of the Geddeses on their first cause of action. The court entered judgment for United Staffing and Everest Administrators on claims two and three. United Staffing and Everest Administrators appeal from the district court's judgment in favor of the Geddeses. They contend the district court applied the incorrect standard of review, relied on extrinsic evidence beyond the administrative record, misinterpreted Plan provisions, and failed to consider United Staffing's pre-certification argument.

Everest additionally claims that the district court's money judgment against it was clear legal error.

## II. Discussion

### A. Standard of Review for Benefit Determinations

The first and most significant issue we must decide is the standard to apply in reviewing United Staffing's denial of health benefits. This question colors all the rest. The district court concluded it had authority to review United's determinations *de novo*, rather than for arbitrariness and capriciousness. We disagree.

ERISA allows plaintiffs to sue in federal court to "recover benefits due . . . under the [healthcare] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). But the ERISA statute does not specify the judicial standard of review. The Supreme Court closed the lacuna in 1989, holding in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), that a denial of benefits challenged under § 1132(a)(1)(B) "is to be reviewed under a *de novo* standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. If the plan does explicitly confer discretionary authority on an administrator with so-called *Firestone* language, courts must review benefit determinations

-6-

under an "arbitrary and capricious" standard. *Chambers v. Family Health Plan*, 100 F.3d 818, 825 (10th Cir. 1996).

The United Plan contains *Firestone* language. The Master Plan Description provides: "The Company is the *named fiduciary* and is the *plan administrator* of the Plan . . . . [T]he Company makes all final decisions about benefits paid from the Plan." Appellees' App. at 250 (emphasis in original). Despite this provision, the district court found that by delegating claims administration to Everest, United Staffing failed to exercise its administrative discretion and thereby forfeited its right to deferential review. The court relied for this conclusion on our decision in *Gilbertson v. Allied Signal Inc.*, 328 F.3d 625 (10th Cir. 2003), in which we held that a plan administrator must actually exercise the discretion the *Firestone* language confers in order to enjoy deferential review of its decisions. *Id.* at 631-32. In *Gilbertson*, the plan administrator failed to render a decision on a disability claim prior to the deadline, and the claim was accordingly "deemed denied" pursuant to ERISA regulations. *Id.* at 631. This Court held that "when substantial violations of ERISA deadlines result in the claim's being automatically denied on review, the district court must review the denial *de novo*, even if the plan administrator has discretionary authority to decide claims." *Id.* We reasoned that "[d]eference to the administrator's expertise is inapplicable where the administrator has failed to apply his expertise to a particular decision."

*Id.* at 632. "[A] 'deemed denied' decision is by operation of law rather than the exercise of discretion." *Id.* at 631.

The district court below held that United Staffing's delegation of authority to an independent claims agency similarly constitutes a failure to exercise administrative discretion, triggering *de novo* review. Like many managed-care providers, United devolves the administrative task of reviewing beneficiary claims to an independent, non-fiduciary third party. The United Plan explicitly anticipates this delegation: "The Company will engage an independent *claims administrator* to administer the Plan, however, the Company makes all final decisions about benefits paid from the Plan." Appellees' App. at 250 (emphasis in original).

The district court interpreted the ERISA statute to preclude judicial deference if fiduciaries pursue this sort of delegation. On the court's logic, the party to which a plan fiduciary or administrator delegates the responsibility to review claims must also be a fiduciary. If the administrator delegates responsibility to a non-fiduciary, the court reasoned, the plan effectively has no fiduciary exercising the sort of discretion that qualifies for *Firestone* deference. Therefore, United Staffing may not both claim judicial deference and delegate responsibility for claims administration to Everest, because Everest is an

independent third party—that is, not itself a fiduciary under the Plan.[1] That Everest, on behalf of United Staffing, handled every claim submitted by the Geddeses led the district court to conclude that United Staffing effectively did nothing, totally failing for purposes of the ERISA statute and *Gilbertson* to exercise its discretion and thereby forfeiting its claim to deferential review.

We cannot agree with this logic, which we suspect was at least partly informed by the district court's misleadingly truncated reading of a provision of the ERISA statute. The district court quoted the statute to say: "The instrument under which a plan is maintained may expressly provide for procedures . . . (B) for named fiduciaries to carry out fiduciary responsibilities . . . under the plan." Appellees' App. at 801. From this, the court drew the negative inference that the Plan may not provide for non-fiduciaries to carry out fiduciary responsibilities—at least not without forfeiting judicial deference to the decisions made by the non-fiduciary. But the district court omitted a critical phrase from the statute, which actually reads: "The instrument under which a plan is maintained may expressly provide for procedures . . . (B) for named fiduciaries *to designate persons other than named fiduciaries* to carry out fiduciary

_____

[1] The district court found that Everest Administrators, Inc., was an independent, third-party non-fiduciary. Appellees' App. at 800. No party to this action argues otherwise, and we see no reason to revisit that conclusion. If Everest did qualify as an ERISA fiduciary under 29 U.S.C. § 1002(16)(A), 21(A), our conclusion that its benefits decisions on behalf of United Staffing are entitled to deferential review would follow all the more readily.

responsibilities . . . under the plan." 29 U.S.C. § 1105(c)(1) (emphasis added). The plain language of the statute thus endorses the delegation to non-fiduciary third parties the district court found suspect.

Nor is the district court's interpretation a valid extension of either *Firestone* or this Court's decision in *Gilbertson*. To qualify their decisions for deferential review, *Firestone* requires only that ERISA health plan administrators and fiduciaries reserve discretionary authority to themselves in the plan document. 489 U.S. at 115. The Supreme Court arrived at this rule by relying on the principles of trust law. *Id.* at 111 ("In determining the appropriate standard of review for actions under § 1132(a)(1)(B), we are guided by principles of trust law."). Professor John Langbein has explained that "ERISA is, in its most important dimension, federal trust law. Substantively, the statute . . . absorbs the core fiduciary duties of loyalty and prudence from trust law and extends them to govern all aspects of plan administration." John L. Langbein, *What Erisa Means by "Equitable": The Supreme Court's Trail of Error in* Russell*, Mertens*, and Great-West, 103 Colum. L. Rev. 1317, 1319 (2003). Trust doctrine teaches that if a trustee has been endowed by the trust instrument with discretionary authority, courts will not interfere with the trustee's decisionmaking unless he acts dishonestly or fails in his judgment. Restatement (Second) of Trusts § 187 cmt. e (1959). Following this instruction, the *Firestone* Court declined to limit how an ERISA plan administrator, vouchsafed discretion under the plan document, may

exercise its discretionary authority. *See* 489 U.S. at 111. Specifically, *Firestone* does not limit the parties to whom a fiduciary may delegate its authority, beyond those limits implicit in the principles of trust law. Consequently, we turn to trust law itself for further guidance.

Long-accepted trust doctrine holds that while a fiduciary may not delegate the entire administration of his trust absent specific authorizing language in the trust instrument, a fiduciary may delegate the performance of certain tasks "which it is unreasonable to require him personally to perform." Restatement (Second) of Trusts § 171 cmt. d (1959). *See, e.g., Wachovia Bank and Trust Co. v. Morgan*, 182 S.E.2d 356, 363 (N.C. 1971). Trust law regards this discretion to delegate as inherent in the fiduciary-trustee. The fiduciary's inherent discretion is confirmed and extended when the authority to delegate is explicitly mentioned in the trust instrument. "By the terms of the trust a trustee may be permitted to delegate to agents or to co-trustees or to other persons the administration of the trust or the performance of acts which could not otherwise be properly delegated." Restatement (Second) of Trusts § 171 cmt. j; *see Central States v. Central Transport, Inc.*, 472 U.S. 559, 568-69, 570-71 (1985).

Importantly for the disposition of the issue before us, trust law does not require a fiduciary to delegate his authority only to other fiduciaries. Rather, the trustee is at liberty to delegate administrative tasks to "agents" or "other persons" as is necessary to carry out the purposes of the trust. Restatement (Second) of

Trusts § 171 cmt. j; *see also id.* § 186 cmt. d; *In re Butler's Trusts*, 26 N.W.2d 204, 211 (Minn. 1947); *Hagedorn v. Arens*, 150 A. 4, 8 (N.J. Ch. 1930). A fiduciary's decision to delegate does not violate his responsibility to the trust beneficiary insofar as the fiduciary himself remains personally liable for any decisions taken on his behalf. In sum, the fiduciary is responsible for actions performed in his name. Restatement (Second) of Trusts § 225 (1959). The same is true in the ERISA context.

Once a health plan administrator, the ERISA counterpart to trust law's fiduciary-trustee, has been delegated discretionary authority under the terms of the ERISA plan, nothing prevents that administrator from then delegating portions of its discretionary authority to non-fiduciary third parties, as any similarly-situated trustee may do. This is especially true when such delegation is explicitly authorized by the plan document. The plan administrator remains liable, however, for decisions rendered by its agents, just as a trustee remains ultimately responsible for the actions of his delegates. In the instant case, the Plan specifically empowered its fiduciary, United Staffing, to employ an independent third party to review benefit claims, even while reserving to United Staffing final authority over all benefit determinations. United Staffing's decision to delegate limited authority to Everest Administrators according to the terms of the controlling Plan instrument accords with *Firestone* and with the background

-12-

principles of trust law.  It does not constitute a failure of fiduciary judgment sufficient to warrant *de novo* review.

The district court justified its contrary conclusion by citing to our decision in *Gilbertson*, but its reliance on that case is misplaced for two reasons.  First, *Gilbertson*'s core holding finds no application here.  *Gilbertson* stands for the proposition that ERISA administrators are not entitled to deference for "deemed denied" decisions made "by operation of law rather than the exercise of discretion."  328 F.3d at 631.  But Everest and United did not simply deem the Geddeses' claims "denied" without further review, as the defendant-administrator did in *Gilbertson*.  *Id.*  Instead, Everest made a benefits determination according to the procedures of the Plan, which United, as the Plan fiduciary, then accepted.  Thus, unlike in *Gilbertson*, discretion was exercised by some combination of the fiduciary and its agent.

*Gilbertson* in no way implies, as the district court inferred, that plan fiduciaries qualify for *Firestone* deference only if they delegate their authority to other named fiduciaries.  In fact, we approved in *Gilbertson* a plan administrator's delegation of claims review authority to an independent, third-party claims agency as an appropriate exercise of fiduciary discretion.  328 F.3d at 630.  The facts are closely analogous to the situation here.  The health plan administrator in *Gilbertson*, AlliedSignal, named a third party claims administrator, Life Insurance Company of North America, to administer its plan

-13-

and determine eligibility benefits. *Id.* at 628. We found no fault with this procedure: "Allied Signal's plan expressly vests discretionary authority to determine benefits eligibility in the Plan Administrator [], who has delegated its discretion to LINA. . . . Therefore, because the Plan, albeit indirectly, grants discretionary authority to LINA, LINA's decisions on benefit claims should generally be reviewed under the arbitrary and capricious standard." *Id.* at 630. We follow that analysis in the present case.

Although the Geddeses refer us to no cases adopting a contrary interpretation, we are aware of at least one circuit that disagrees with our conclusion. In *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288 (11th Cir. 1990), the Eleventh Circuit held that in order to qualify for *Firestone* deference, an ERISA plan administrator that delegates its authority must do so only to other fiduciaries. *Id.* at 291. The Eleventh Circuit's logic parallels the district court's in our case. "[A]ny entity or person found not to be an ERISA 'fiduciary' cannot be an 'administrator with discretionary authority' subject to the arbitrary and capricious standard." *Id.*[2] While we agree that an ERISA plan

_____

[2] The Ninth Circuit's position regarding the power of named fiduciaries to delegate their authority is ambiguous. In *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279 (9th Cir. 1990), the Ninth Circuit held that "where (1) the ERISA plan expressly gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan and (2) pursuant to ERISA . . . a named fiduciary properly designates another fiduciary, delegating its discretionary authority, the 'arbitrary and capricious' standard of review . . . applies to the designated

(continued...)

-14-

administrator must be a fiduciary, 29 U.S.C. § 1002(16)(A), 21(A), there is nothing in the language of the ERISA statute, the logic of *Firestone,* or the background principles of trust law that requires fiduciaries, when delegating authority, to delegate only to other fiduciaries. Indeed, we would go so far as to say the plain language of the ERISA statute and the venerable body of trust law say just the opposite. Decisions made by an independent, non-fiduciary third party at the behest of the fiduciary plan administrator are entitled to *Firestone* deference because the third parties act only as agents of the fiduciary. For purposes of liability, decisions made by third parties are decisions made by the fiduciary. If a plan administrator has been allotted discretionary authority in the plan document, the decisions of both it and its agents are entitled to judicial deference.[3]

It remains now to apply this standard to the disputed claims denials in this case.

---

[2](...continued)
ERISA-fiduciary as well as to the named fiduciary." *Id.* at 1283-84 (internal citations omitted). This might be read to require that fiduciaries delegate their authority only to other fiduciaries in order to qualify for *Firestone* deference, but such an interpretation is not necessary and would, in any event, be dictum.

[3]Contrary to the dissent, it is immaterial for present purposes whether Everest's responsibilities are labeled "ministerial" or "discretionary." Either way, all decisions were made by United Staffing or by its agent – unlike *Gilbertson*, where the decision was made by operation of law, due to the failure of the fiduciary or its agent to make the relevant decision before the deadline.

**B. The Primary Children's Claims**

United Staffing declined to cover the majority of the Geddeses' medical costs from both Primary Children's Hospital in Salt Lake City and St. Mary's Hospital in Grand Junction, but for different reasons. With regard to the denial of coverage for Andrew Geddes's treatment at Primary Children's, United concluded that the care provided there was almost entirely rehabilitative in nature. As part of its evaluation of that rationale for denying benefits, the district court supplemented the administrative record with the affidavit of Dr. Teresa Such-Neibar and with evidence from deposition testimony. Appellees' App. at 795, 805, 806, 814. But a reviewing court is permitted to consider extrinsic evidence only on *de novo* review of a benefit claim. *Hall v. Unum Life Ins. Co. of Am.,* 300 F.3d 1197, 1202 (10th Cir. 2002) (holding courts may "supplement [the administrative] record when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision"). The district court's review should not have been *de novo*. Consequently, we direct the district court on remand to consider only evidence from the closed administrative record. In so doing, we imply no opinion as to the outcome the district court should reach under the arbitrary and capricious standard.

United Staffing also appeals from the district court's rejection of its claim that because the Geddeses failed to pre-certify Andrew's in-patient care at

Primary Children's, United's denial of benefits was justified. The district court refused to consider this argument on summary judgment, finding United had failed to raise the claim at the proper time. Our case law forbids the district court from relying on new arguments or materials to decide a summary judgment motion unless the opposing party is provided an opportunity to respond. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998). Whether to allow supplemental briefing on a newly-raised issue is a "supervision of litigation" question we review for abuse of discretion. *See Pippin v. Burlington Res. Oil & Gas*, 440 F.3d 1186, 1192 (10th Cir. 2006); *Beaird*, 145 F.3d at 1164-65. We affirm the district court.

United Staffing contends it raised the pre-certification argument in its briefs before the district court, in its initial answer to Plaintiff Geddeses' complaint, and in its memorandum of opposition to the Geddeses' summary judgment motion. Upon review of the record, we find no mention of the pre-certification argument in any of these places. United raised the issue at oral argument before the district court on December 8, 2004, and again in supplemental briefing to the court on February 11, 2005. Contrary to United's assertions, however, its initial answer to the Geddeses' complaint mentions nothing about pre-certification, but claims only that the Plan's denial of benefits was not arbitrary and capricious. Appellants' App. at 28-29. Similarly, United's memorandum in opposition to the Geddeses' motion for summary judgment

-17-

quotes portions of correspondence between the Geddeses and Defendant Everest, including internal notations made by Everest that identify pre-certification as a problem. But United did not make an affirmative pre-certification argument at this stage either. Instead, the quotations are adduced in support of United's claim that it engaged in "meaningful dialogue" with the Geddeses. In effect, United seeks to bootstrap the pre-certification argument into the broader issue of its discretion as administrator under the Plan, though it failed to argue the pre-certification issue explicitly. The court did not abuse its discretion by refusing to consider the new issue at the late juncture when it was raised. *Beaird*, 145 F.3d at 1164-65.

In sum, we reverse the district court's judgment as to the Primary Children's claims and remand for reconsideration on the administrative record, according to an "arbitrary and capricious" standard of review. We affirm the district court's refusal to consider United's belated pre-certification claims.

**C. The St. Mary's Claims**

United Staffing refused to pay more than $37,363.33 of the Geddeses' $86,460.70 in bills from St. Mary's Hospital in Grand Junction, on the ground that the hospital's charges exceeded the "usual and customary" fee United Staffing agreed to cover in the Plan document. Appellees' App. at 796. Applying a *de novo* standard of review, the district court held that this was an erroneous interpretation of the Plan. According to the district court, it would be

unreasonable to interpret the "usual and customary" fee charged by an out-of-network provider to be equivalent to the fees charged by in-network providers, with whom the Plan negotiates discounted rates. As discussed above, the district court's use of a *de novo* standard of review was incorrect. But in analyzing this portion of the Geddeses' claim, the district court repeatedly invoked the language of arbitrary and capricious review, and relied in its opinion on an Eleventh Circuit holding reached under the arbitrary and capricious standard. We therefore interpret the district court as holding that United's interpretation of "usual and customary" is unreasonable under either standard of review, and affirm on that ground.

St. Mary's was a so-called "out-of-network" provider. The Plan authorizes payment to out-of-network providers only up to an allowed amount, which the Plan defines as "the usual and customary amount determined by the Plan." Appellees' App. at 263. What counts as "usual and customary," however, is not specified in the Plan document. The disputed provision states in full:

**Allowable expenses**. For services provided by a participating provider. The contracted amount of payment to which the provider has agreed. For services provided by a non-participating provider, the usual and customary amount as determined by the Plan.

*Id.* Everest Administrators, as United's agent, defined "usual and customary" to mean "what the plan pays on average for in-network services." Appellants' App. at 166; *see also* Appellees' App. at 297-98. The Geddeses, by contrast, argue the provision reasonably means the market rate prevailing in a given geographic region.

Under the arbitrary and capricious standard, our inquiry is limited to determining whether the plan administrator's interpretation of the ambiguous language was "reasonable and made in good faith." *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (quoting *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1213 (10th Cir. 2002)). We will not substitute our own judgment for that of the plan administrator unless the administrator's actions are without any reasonable basis. *Woolsey v. Marion Lab.*, 934 F.2d 1452, 1460 (10th Cir. 1991); Restatement (Second) Trusts § 187 cmt. e. We ask four questions derived from the principles of trust law: (1) Is the interpretation the result of a reasoned and principled process? (2) Is it consistent with any prior interpretations by the plan administrator? (3) Is it reasonable in light of any external standards? And (4) is it consistent with the purposes of the plan? *Fought*, 379 F.3d at 1003; Restatement (Second) Trusts § 187 cmt. d (1959). We answer these queries based on the administrative record. *Hall*, 300 F.3d at 1201.

In the case at bar, the parties do not address whether United's interpretation was the result of a principled process or consistent with prior interpretations, and

neither shall we. The Geddeses do maintain, however, that United's interpretation of "usual and customary" is unreasonable and unfair, implicating the third and fourth inquiries above. Under factor three, we consider "the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged." Restatement (Second) Trusts § 187 cmt. d. If there is such a standard, trust law generally holds the trustee guilty of an abuse of discretion if he contravenes it. *In re Curtis' Trust Estate*, 33 N.W.2d 193, 198 (Wis. 1948) (holding that while the trust instrument did not affirmatively require trustees to pay the beneficiary's taxes, such payment was reasonable and necessary to effect the purposes of the trust). In the present case, industry custom provides a reasonable external standard by which to evaluate United's interpretation of the ambiguous phrase, "usual and customary." When calculating payments to non-network providers, healthcare administrators typically rely on rate schedules assembled from a survey of average treatment charges in a given geographic region. *Hickman*, 299 F.3d at 1210; *Schwartz v. Oxford Health Plans, Inc.*, 175 F. Supp 2d 581, 589 (S.D.N.Y. 2001). Yet neither United nor Everest made any such surveys, and United did not include rate tables or benefit schedules in the Plan. Instead, United and Everest simply declared the "usual and customary" rate for out-of-network providers to be the same as the average for in-network providers. The district court found, and we agree, that interpreting a "customary" charge in the

medical market as synonymous with the discounted rate negotiated by a health

plan with its preferred providers is a significant deviation from industry custom.

What's more, that deviation frustrates the purposes of the Plan. According

to the Plan document, United Staffing established its medical alliance "to make

health care benefits available to . . . qualifying employees and their eligible

dependents." Appellees' App. at 250. But United's interpretation of "usual and

customary" effectively denies plan members medical coverage if they, like the

Geddeses, are forced to use an out-of-network provider. Nothing in the Plan

document alerts beneficiaries to this significant limitation on their medical

coverage. In fact, by juxtaposing the "contracted amount" for in-network

providers with the "usual and customary" charge levied by out-of-network

physicians—and by promising to cover both—the text of the Plan directly implies

the two rates are distinct, and that out-of-network expenses will be covered at the

prevailing market rate. *See* Appellees' App. at 263.

In analyzing a similar provision in another ERISA health plan, the Eleventh

Circuit noted that the "usual and customary fee is the reasonable fee," the fee a

prudent person would expect to pay based on the prevailing market rate. *HCA*

*Health Serv. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 997 (11th

Cir. 2001). A prudent person "would not even consider the discounted fee

because it only arises out of a specified contractual relationship." *Id.* That is, the

in-network provider fee is by definition *not* the usual fee charged by physicians in

any given market.  The whole purpose of assembling a network of preferred health providers is to allow the insurer to cover its beneficiaries' expenses on a negotiated schedule below the prevailing market rate.  We agree with the analysis of the Eleventh Circuit in *HCA Health*: a reasonable, prudent person would never suspect that the "usual and customary" fee for medical services was synonymous with the lower, contractual fee charged by an insurer's in-network physicians. Such an interpretation renders "usual and customary" virtually meaningless.

United's interpretation has the effect of misleading Plan members and denying them necessary medical coverage.  Given its departure from industry custom and its deleterious effect on Plan beneficiaries, we find United's interpretation of "usual and customary" arbitrary and capricious.  We agree with the district court that "usual and customary" in this instance means the prevailing market rate.   We affirm the district court's order directing United to pay the Geddeses' St. Mary's Hospital invoices as billed.

### D.  Everest's Liability under the Statute

We come finally to Defendant Everest's belatedly-raised argument that the district court lacked authority under 29 U.S.C. § 1132(d)(2) to order a money judgment against it.  Because the issue was not raised below, we may consider it here only if the argument is purely a matter of law whose proper resolution is certain.  *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1228 (10th Cir. 2003) (quoting *Ross v. United States Marshal for E. Dist. of Ok.*, 168

F.3d 1190, 1195 n.5 (10th Cir. 1999)).  We believe it is.  The ERISA statute is clear: ERISA beneficiaries may bring claims against the plan as an entity and plan administrators.  Everest is neither.  We reverse the district court.

We predicate our analysis on the district court's conclusion that Everest Administrators is not a fiduciary under the terms of the ERISA statute.  *See* Subsection II.A n.1, *supra*.  No party to this action argues to the contrary.  Under these circumstances, we decline here to revisit that factual conclusion.

The language of 29 U.S.C. § 1132(d)(2) allows beneficiaries to bring claims against the plan entity, and possibly against plan administrators and named fiduciaries as well.  The statute provides:

> Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

*Id*.

The circuits are divided on whether beneficiaries may bring claims against plan administrators and named fiduciaries in addition to the plan entity.  But no circuit holds that a non-fiduciary such as Everest is liable under the terms of 29 U.S.C. § 1132(d)(2).  *Compare Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) ("It is true that ERISA permits suits to recover benefits

only against the plan as an entity. . . .") *and Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (quoting *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985) ("ERISA permits suits to recover benefits only against the plan as an entity.")))), *with Curcio v. John Hancock Mut. Life. Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994) (stating that ERISA permits suits to recover benefits against the plan as an entity and against the fiduciary of the plan); *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988) (holding that the proper party in an ERISA action concerning benefits is the party "shown to control administration of the plan").

This makes sense in light of traditional trust principles, as applied to the architecture of ERISA plan administration. The statute requires that plan administration be vested in a fiduciary, and permits the fiduciary plan administrator to employ an agent to carry out plan responsibilities. The fiduciary owes a duty of care to the beneficiaries, and is legally responsible both for its own decisions and also for decisions made by its agent. *Cook v. Holland*, 575 S.W.2d 468, 472 (Ky. Ct. App. 1978); *In re Estate of Lohm Estate*, 269 A.2d 451, 455 (Pa. 1970); *In re Hartzell's Will*, 192 N.E.2d 697, 706 (Ill. App. Ct. 1963); *Kenny v. Citizens Nat. Trust & Savings Bank of Los Angeles*, 269 P.2d 641, 652 (Cal. Ct. App. 1954); Restatement (Second) of Trusts § 225. The agent, however, assuming it is not a fiduciary, owes duties to the administrator and not to the beneficiaries.

As an independent, non-fiduciary, third party administrator, Everest might still be liable under the statute if the Geddeses had made claims against Everest individually, distinct from its role as United's agent. But they did not. Nor did the district court find any basis for personal liability against Everest. For these reasons, the money judgment against Everest is reversed.

### III.  Conclusion

We **REVERSE** the district court's judgment as to the Primary Children's claims and remand for reconsideration on the administrative record, on an "arbitrary and capricious" standard of review. We **AFFIRM** the district court's refusal to consider United's belated pre-certification argument. We **AFFIRM** the district court's judgment as to the St. Mary's claims against United. We **REVERSE** the district court's money judgment against Everest.

No. 05-4142, *Michael Geddes, et al. v. United Staffing Alliance Employee Medical Plan, et al.*

**HOLLOWAY**, Circuit Judge, concurring in part and dissenting in part*:*

I respectfully dissent from the holding that the benefits determinations should be reviewed under the arbitrary and capricious standard. I therefore dissent from Parts II-A and II-B of the majority opinion, and I concur only in the result as to Part II-C. I concur in Part II-D, agreeing that the court should notice and reverse the error of entering judgment against defendant Everest.

**I**

First, I disagree with the majority's framing of the issue as "whether a fiduciary's decision to delegate part of its *Firestone* authority to an independent claims administrator triggers *de novo* review." Maj. op. at 2. The question instead is simply whether any discretion was exercised to which the courts owe deference. I believe that on this record the answer to that question is clearly no. In this case, the fiduciary party with discretion (United) did not act, and the party which acted (claims administrator Everest) had no discretion. The majority's holding, which is in effect that *any* act authorized by a party vested with discretion must be reviewed with deference, is contrary to – rather than dictated by – the common law of trusts, is contrary to the manifest intent of Congress for ERISA plans to be administered by a fiduciary, and creates a circuit split by adopting its unprecedented holding.

The majority's analysis is critically flawed because its underpinning is the unsupported assumption that "discretion was exercised by some combination of the fiduciary and its agent." Maj. op. at 13. As I will demonstrate *infra*, any suggestion that the agent exercised discretion is not supported by the evidence concerning how the claims were handled and is directly contrary to the contractual provision governing the relationship between the fiduciary and the agent. Further, both the fiduciary and the agent specifically denied in their pleadings, under constraints of Fed. R. Civ. P. 11, that the agent exercised any discretion. And the record is clear that the fiduciary, United, did nothing at all. Consequently, the majority's naked assertion that some combination of the fiduciary and its agent exercised discretion is simply that – a naked assertion completely lacking in support.

**II**

Before outlining the facts and circumstances that refute the majority's key assumption, I think it useful to briefly state the relevant legal principles. We said in *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003), that to be entitled to deferential review, the administrator must actually exercise the discretion granted by the plan. The district court applied the plain meaning of that statement and others from *Gilbertson*, including this:

> "[I]f a trustee fails to act or to exercise his or her discretion, *de novo* review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; *it is the trustee's analysis, not his or*

-2-

> *her right to use discretion or a mere arbitrary denial, to which a*
> *court should defer."*

*Gilbertson*, 328 F.3d at 633 (quoting *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d

Cir. 2002)) (emphasis added).  I agree with the district court that this language

should be applied to the circumstances here where the administrator only acted

through the agent, which had neither discretion nor fiduciary duties.[1]  No party

exercised the discretion granted by the plan; therefore, the plan administrator is

not entitled to deferential review.  This seems in keeping with the common law of

trusts:  "Where discretion is conferred upon the trustee . . . *its exercise* is not

subject to control by the court, except to prevent an abuse by the trustee of his

discretion."  Restatement (Second) of Trusts § 187 (1959) (emphasis added).

Failure to use judgment is by definition an abuse of discretion.  *See id.* at

comment e.

The other circuits that have considered this issue have reached this same

conclusion.  *See Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 584

(1st Cir. 1993) ("To be an effective delegation of discretionary authority so that

---

[1]The critical legal premise of the majority opinion, it appears, is the conclusion that 29 U.S.C. § 1105(c)(1) permits the delegation of non-fiduciaries to carry out fiduciary responsibilities.  Maj. op. at 9-10.  As shown *infra*, no factual basis exists for application of this conclusion of law in this case where only ministerial duties were delegated.  Moreover, the conclusion is wrong as a matter of law.  Under ERISA, if a party exercises discretion, it *is* a fiduciary.  29 U.S.C. § 1002(21)(A).  *See also Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 291 (11th Cir. 1990) ("[I]t is clear that an administrator with discretionary authority *is* a fiduciary.") (emphasis in original).

the deferential standard of review will apply, therefore, the fiduciary must properly designate a delegate for the fiduciary's discretionary authority."); *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1283-85 (9th Cir. 1990) ("[W]e hold that where . . . a named fiduciary properly designates another fiduciary, delegating its discretionary authority, the 'arbitrary and capricious' standard of review . . . applies . . . ."); and *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 291 (11th Cir. 1990). *See also Nichols v. Prudential Ins. Co.*, 406 F.3d 98, 109 (2d Cir. 2005) ("[W]e conclude that we may give deferential review only to actual exercises of discretion.").

The majority opinion relies heavily on its reading of the statutory provision authorizing delegation of duties. That provision states, in pertinent part:

> The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

29 U.S.C. § 1105(c)(1).[2]

---

[2]It appears to me that a line was inadvertently dropped in the district court's quotation from this statute and that the district judge meant to quote the relevant parts of the provision just as the majority opinion does. This seems likely to me for two reasons. First, the district court opinion introduces its abbreviated quote from the statute by saying that ERISA provides that a named fiduciary may delegate its fiduciary responsibilities. But the provision as quoted in the district court opinion does not say that at all. In fact, the edited version that appears in that opinion merely states what is, under ERISA, a truism: that the plan may provide for named fiduciaries to carry out fiduciary responsibilities.

(continued...)

-4-

In this case, *there was no designation* of any other person to carry out *fiduciary* responsibilities. I do not doubt that the named fiduciary may, as United did here, also designate another, Everest in this case, to carry out ministerial functions. *See* 29 C.F.R. § 2509.75-8, D-2. Or, as in *Madden*, the named fiduciary may designate another fiduciary to perform discretionary duties, and *discretionary* decisions by the designated fiduciary will be reviewed deferentially. But it is precisely because ministerial, and not discretionary or fiduciary, duties were delegated – combined with the key fact that United did not exercise its retained discretionary authority – that no deference is due the decisions made.[3]

I realize that United's delegation of duties to Everest does not relieve it of liability because it is bound by the acts of its agent, as the majority opinion notes.

---

[2](...continued)
Second, the district judge goes on to discuss with apparent approval the holding of *Madden* that where "a named fiduciary properly designates *another fiduciary*, delegating its discretionary authority, the 'arbitrary and capricious standard' . . . applies to the designated ERISA-fiduciary as well as to the named fiduciary." This discussion also is inconsistent with the truncated version of the statutory provision as quoted in the district court's opinion.

[3]The majority opinion says that the fact that Everest handled every claim "led the district court to conclude that United Staffing effectively did nothing, totally failing for purposes of the ERISA statute and *Gilbertson* to exercise its discretion and thereby forfeiting its claim to deferential review." Maj. op. at 9. But the district court did not merely draw an inference that United did nothing. The evidence was clear and undisputed, and based entirely on the deposition testimony of United's representative, that United did nothing. The question is whether a fiduciary which has reserved to itself all fiduciary obligations and all discretion and then does nothing should be afforded the same deferential review that we would give to the decisions of a fiduciary which actually exercised its reserved discretion to make the final determinations on contested claims.

But surely this statute's purposes go beyond ensuring that someone can he held liable through court action.

Under the ERISA scheme, a plan administrator exercises the function of handling claims with fiduciary responsibilities to the plan's beneficiaries. This seems to be close to the very heart of the legislative plan: "It is hereby declared to be the policy of this chapter to protect . . . the interests of participants in employee benefit plans and their beneficiaries, by . . . establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans . . . ." 29 U.S.C. § 1001(b).

More importantly, the issue here is not whether United may be liable for Everest's actions undertaken as United's agent. Of course United may be so liable. The issue instead is whether, in deciding whether liability should be imposed in this case, the court should review the decisions deferentially. And there is simply no basis shown for such deference where the decisions were ministerial, rather than discretionary, in character. In this case the fiduciary clearly failed to exercise its discretion and instead simply defaulted to the non-fiduciary agent, which expressly was not endowed with discretion, to carry out duties that ERISA assigns to a fiduciary. Because no discretion was exercised, no deference is due to the decisions made. In the alternative, however, I would hold that the decisions as to the Primary Children's Hospital claims which were handled in this perfunctory fashion were arbitrary and capricious. The following

discussion illustrates both that the acts were not discretionary and that the decisions were arbitrary and capricious.

## III

I disagree that the majority's result is supported by our decision in *Gilbertson*, but it is useful to note the factual differences in the cases. We noted in *Gilbertson* that the plan administrator had delegated its *discretion* to the third-party claims administrator and that the plan documents expressly authorized such delegation. But this case is quite different. In this case the plan document provided:

> The Company is the *named fiduciary* and is the *plan administrator* of the Plan. The Company will engage an independent *claims administrator* to administer the Plan, however, the Company makes all final decisions about benefits paid from the Plan.

Aple. Supp. App. 250 (italics in original). This is not language delegating discretionary authority or fiduciary responsibilities. *See Nichols v. Prudential Ins. Co.*, 406 F.3d 98, 108-09 (2d Cir. 2005) (discussing language that is effective to vest discretion in an administrator).

Moreover, the defendants in this case have resolutely and consistently taken the position that Everest exercised no discretion and was not a fiduciary. Both specifically denied in pleadings that Everest was vested with discretion. In the Complaint, plaintiffs had alleged on information and belief that both United and

Everest had discretionary authority. Aple. Supp. App. 3, ¶ 12. Both defendants specifically denied the allegation. *Id*. at 12, 19.

The contract under which Everest acted was quite clear on the point:

The Contract Administrator [Everest] shall not be deemed a Plan "fiduciary" as defined in ERISA. [Everest's] services shall not include any power to make decisions regarding Plan policy, interpretations, practices or procedures, but *shall be confined to ministerial functions* such as those described by the U.S. Department of Labor in its Regulations Section 2509.75-8, D-2. . . . . *[Everest] shall have no final discretionary control* over Plan management, including disposition of Plan assets and Plan administration. [Everest's] services hereunder shall be subject to review, modification, or reversal by the Plan Sponsor and/or Plan Administrator.

*Id*. at 271 (emphasis added).

As to the claims for Andrew's treatment at Primary Children's Hospital, the subject of Part II-B of the majority opinion, the deposition testimony of the witness designated to speak for Everest further reveals the ministerial or clerical nature of Everest's services. The witness testified that the process of reviewing the claims for Andrew's treatment at that hospital consisted almost entirely of reading the numerical code used by the hospital to categorize the service and comparing that with the plan's coverage language:

Q. Now, when a claim would come in under this plan, give me an idea of how it was decided whether the claim would be paid, how much would be paid, or whether it would be denied.

A. The basis for doing that is, of course, the provisions of the master plan document and the way that the care is coded or represented by the care provider.

There are universal codes, diagnosis codes, service codes that are used in the medical care field. And those codes are required to be on the bill. If they're not, then we are not able to process the bill. . . . . And those codes are a way that the care provider themselves represents what the care provided was, what classification, what category of care it was. And from those codes we can determine which category on the schedule of benefits is the one that applies.

Again, it's a matter of correctly inputting the care codes in the claims administrator system. And that gives the claims administrator the information they need to categorize the care.

Once the care is categorized, then the schedule of benefits dictates how the benefit payment is made. . . . .

. . . .

But I think it's a pretty good summary of what happens to say that it's a matter of taking the codes that the care provider has assigned to the care they provided. That helps us categorize the care. And then from then – from that point on, the master plan document dictates what benefit is payable by the plan.

****

Q. So then who makes the determination after that of the category that that particular type of service falls into?

A. Almost without exception, the provider of care has categorized the service that they have provided by coding it in a certain way. So – when you use the term judgment, to me, that means that there's some sort of judgment decision to make. And for the most part, that's not the case. It's a matter of simply – of correctly reading what the care provider codes are and putting it in the correct – putting it in the category that the care provider has assigned it to.

*Id*. at 401-04 (testimony of Ronald C. Hulse).

This is, so far as I can determine, the best description available of how the claims for care at Primary Children's Hospital were handled. The hospital chose

to use the numerical code for rehabilitative services rather than the code for services connected with hospitalization for most of the services provided. Rehabilitative services were limited under the plan to $2,500.00. Everest read the codes used by the hospital and mechanically applied the limitation stated in the plan. This is the "exercise of discretion" to which, the majority holds, deference is required.

Because I disagree with the fundamental premise that discretion was exercised by Everest as agent for United, I see no basis for employment of the deferential standard of review. I therefore respectfully dissent from the holdings in Parts II-A and II-B of the majority opinion and would affirm the district court's judgment on the claims involving care provided at Primary Children's Hospital.[4] I concur in the result of Part II-C, which affirms the district court's judgment on the claims involving care provided at St. Mary's Hospital, but for the reasons set out herein I would reach that result by affirming the district court's analysis under *de novo* review rather than by re-examining the claims under the arbitrary and capricious standard.

---

[4]After holding that the *de novo* standard of review applied because the delegation of responsibilities was to a non-fiduciary and no fiduciary ever reviewed the Geddes' claims, the district judge noted that his holding made it unnecessary to determine whether the *de novo* standard should be applied for another reason – the Geddes' allegation that the administrator failed to follow its claims and appeals procedures. I feel it appropriate to note that the district court is free to address that issue on remand.

-10-

## IV

For the reasons stated in Part II-D of the majority opinion, I agree that the monetary judgment against Everest should be reversed.