**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 7, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROBIN CAMERON,

      Plaintiff-Appellant,

v.

AMERICAN ELECTRIC POWER
SERVICE CORP., a New York
corporation qualified to do business in
Oklahoma; CENTRAL AND SOUTH
WEST SERVICES, INC., a foreign
corporation; PUBLIC SERVICE
COMPANY OF OKLAHOMA,
an Oklahoma corporation; CENTRAL
AND SOUTH WEST CORPORATION
EMPLOYEES' DISABILITY
INCOME PLAN,

      Defendants-Appellees.

No. 06-5191
(D.C. No. 04-CV-00948-CVE-SAJ)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Robin Cameron worked as a customer service supervisor for Public Service Company of Oklahoma, formerly a wholly owned subsidiary of Central South West Corporation ("CSW"). She participated in CSW's Employees' Disability Income Plan ("CSW Plan"). After the Plan terminated her long-term disability benefits and upheld the termination in administrative appeals, she challenged its decision in federal district court under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (ERISA). The district court upheld the Plan's termination of her benefits.

On appeal, Ms. Cameron argues that: (1) the Plan used an inapplicable plan document from a different plan, the American Electric Power Long Term Disability Plan ("AEP Plan"), to terminate her benefits; (2) the determination to terminate her benefits under an "any occupation" standard was made before that standard properly applied to her; and (3) she remains entitled to "any occupation" benefits because the definitions used to evaluate her claim under the CSW Plan and the AEP Plan are different.

We begin by determining the standard of review of the CSW Plan's denial of benefits. The appropriate standard is whether its decision was arbitrary and capricious. Notwithstanding Ms. Cameron's multifarious arguments, de novo review is not required. We next conclude that under the proper standard, the alleged errors are not reversible, because: (1) there is no evidence that the

Benefits Appeal Committee (BAC)[1] failed to apply the CSW Plan to its decision on Ms. Cameron's claim; (2) the final decision on her claim was made during a time period when the "any occupation" standard was in force, and the BAC properly applied that standard; and (3) the BAC properly applied the CSW Plan definition of "disability" to her claim. We therefore affirm the judgment of the district court.

**FACTS**

**1.  Commencement of Disability Benefits**

Ms. Cameron last worked for CSW on October 3, 2000. She alleged total disability beginning the following day, due to agoraphobia and panic attacks. She applied for disability benefits under the Plan and her application was approved. The CSW Plan provides for a benefit waiting period of five full calendar months beginning with the first date of disability before benefits begin. Accordingly, the Plan began paying Ms. Cameron benefits effective April 1, 2001.

In 2000, American Electric Power Services Corporation (AEP) acquired CSW and its subsidiaries. AEP assumed responsibility for the CSW Plan

---

[1]    The AEP Long Term Disability Benefits Appeal Committee (BAC) is *not* the same entity as the "Benefit*s* Appeal*s* Committee" named to administer appeals in the CSW Plan document. As explained further herein, the BAC was substituted for the Benefits Appeals Committee by corporate resolution, as part of AEP's acquisition of CSW. In this decision, when referring to the entity identified in the CSW Plan document, we refer to the "Benefits Appeals Committee," while when referring to the actual entity that made the decision in Ms. Cameron's case, we refer to the (substituted) "BAC."

beginning January 1, 2001. Employees who had not yet filed a claim by that date were covered under the AEP Plan; because Ms. Cameron was classified as disabled prior to January 2001, her claim remained governed by the CSW Plan. Both plans were administered by Kemper National Services, Inc. (Kemper).

### 2. "Own Occupation" vs. "Any Occupation"

Like many private disability plans, the CSW Plan relies on a two-tiered definition of total disability. During the first 24 months after the waiting period expires, a participant is considered totally disabled if, among other requirements, she suffers from a sickness or injury that "may reasonably be expected to prevent [her] from performing the material duties of [her] specific job with [the] Company." Aplt. App., Vol. II, at 64. As a shorthand, we refer to this as the "own occupation" standard. After the expiration of the 24 month period, an employee must meet a higher standard. She must then show that the sickness or injury prevents her "from engaging in any occupation . . . for which [she] is reasonably qualified by training, education, background or experience." *Id.* We refer to this as the "any occupation" standard.

### 3. Kemper's Review and Termination of Benefits

Ms. Cameron's 24-month period for payment of benefits under the "own occupation" standard was not scheduled to expire until April 1, 2003. But on October 4, 2002, Kemper sent Ms. Cameron a letter in which it erroneously stated that she had received 24 months of benefits and that the "any occupation"

-4-

standard now applied. Defendants concede that this calculation was in error and that benefits should have continued under the "own occupation" standard until March 31, 2003. In the letter, Kemper further announced that it would be conducting a review of Ms. Cameron's continued eligibility for benefits under the "any occupation" standard.

As part of its review, Kemper conducted an independent medical evaluation (IME) and performed hidden surveillance of Ms. Cameron. It concluded that she could travel, drive, and interact with others without excessive levels of anxiety. Kemper sent copies of the surveillance tapes along with a report of the IME and a peer physician review report to her treating physician, Dr. Cobb. Kemper opined that the tapes "suggest that Ms. Cameron is functioning at a higher level than that demonstrated in the [attending physician and behavioral clinician statements] completed by [Dr. Cobb]." *Id.* at 253.

Dr. Cobb disagreed. He wrote to Kemper that he stood by his opinion that Ms. Cameron "suffers from severe Panic Disorder with Agoraphobia to the extent that it prevents her from performing the essential duties of any occupation for which she is qualified by education, training and experience." *Id.* at 266. Nevertheless, on January 20, 2003, Kemper found that Ms. Cameron did not meet the "any occupation" standard and therefore terminated her benefits, effective February 1, 2003.

### 4. First and Second Level Appeals

Ms. Cameron appealed. On March 26, 2003, Kemper upheld its previous termination of benefits. Its letter to Ms. Cameron denying her appeal mistakenly identified her as a participant in the AEP Plan, and informed her that if she wanted reconsideration of the decision, she should file a "letter of appeal to American Electric Power Service Corporation." *Id.*, Vol. III, at 580.

The Plan obtained additional peer review evaluations, each of which concluded that Ms. Cameron's impairments would not preclude her from working. On August 1, 2003, the BAC issued a decision upholding Kemper's decisions to terminate Ms. Cameron's benefits. Its letter to Ms. Cameron cited the "any occupation" standard from the CSW Plan. *Id.* at 600.

### 5. District Court's Decision

Ms. Cameron then filed this suit in district court to recover benefits and to enforce her rights under ERISA. The district court determined that since the Plan administrator and the BAC had discretion under the Plan to interpret its terms and to determine eligibility, the termination decision should be reviewed for an abuse of discretion, rather than de novo as contended by Ms. Cameron. It further found that although Kemper mistakenly quoted the AEP Plan in its communications with Ms. Cameron, it properly applied the terms of the CSW Plan to her claim, and that she was entitled to judgment against the defendants for disability benefits

from February 1 to March 31, 2003. The decision to terminate her benefits under the "any occupation" standard that became applicable on April 1, 2003 was, however, supported by substantial evidence and was reasonable. The district court therefore granted summary judgment for the defendants on the remainder of her ERISA claim.[2]

## ANALYSIS

### 1. Standard of Review

Our standard of review of summary judgment is de novo. *See Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1295 (10th Cir. 2000). The parties disagree, however, concerning the standard to be applied to review of the underlying decision to terminate Ms. Cameron's benefits. The defendants contend that the decision should be reviewed under the arbitrary and capricious standard, while Ms. Cameron spends much of her brief arguing for de novo review.

### a. Discretionary Authority

A denial of benefits covered by ERISA "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

---

[2] Ms. Cameron's complaint also contained a wrongful termination claim. Because this claim remained pending, the district court granted her a certification for an immediate appeal of the ERISA claim, pursuant to Fed. R. Civ. P. 54(b).

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the benefit plan gives such discretion to a plan administrator, then we typically review a decision denying benefits under an arbitrary and capricious standard. *Fought v. UNUM Life Ins. Co.*, 379 F.3d at 997, 1003 (10th Cir. 2004). Such review is limited to "determining whether the ... interpretation [of the plan] was reasonable and made in good faith." *Id.*

The CSW Plan grants discretionary authority to CSW's Benefits Advisory Committee to, inter alia, "resolve all questions relating to the right of a Participant to receive benefits under the Plan," and to "construe and interpret the Plan." Aplt. App., Vol. II, at 70 ¶ 6.2. The Committee has fiduciary duties with respect to the Plan, with the exception of responsibilities allocated to the Claims Administrator or delegated to other persons or organizations under the terms of the Plan. *Id.* at 70-71. In accordance with this authority, CSW has designated Kemper as the Plan Administrator, and has delegated to Kemper discretionary authority to administer the Plan. Finally, the Plan specifically grants the Benefits Appeals Committee, which is an ERISA fiduciary, the same authority and discretion as the Committee. *Id.* at 72 ¶ 6.10. This authority over benefits appeals was delegated or transferred to the BAC.

### b. Fiduciary Responsibility

Notwithstanding this grant of discretionary authority, Ms. Cameron makes a number of arguments in favor of de novo review of the decision in her case.

She first contends that neither the Committee nor the Plan Administrator has sufficient fiduciary responsibility to be entitled to deference for its decisions. The Committee lacks such responsibility, she argues, because it is permitted to delegate administrative responsibility to the Administrator. The Administrator lacks such responsibility because it is not a named fiduciary of the Plan.

We have specifically rejected the position that "plan fiduciaries qualify for . . . deference only if they delegate their authority to other named fiduciaries." *Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 927 (10th Cir. 2006), *petition for cert. filed*, 75 U.S.L.W. 3610 (May 2, 2007) (No. 06-1458). Ms. Cameron's argument therefore lacks merit.

### c. *Ray v. UNUM Life*

Second, Ms. Cameron asserts that deference is inappropriate because the Plan "only requires [that] proof of disability be submitted, and fails to specify who is to be convinced by this proof." Aplt. Br. at 7. She cites *Ray v. UNUM Life Insurance Co.*, 314 F.3d 482, 486 (10th Cir. 2002), which was remanded for application of de novo review, because the terms of the plan merely required a claimant to submit "proof" of disability, but did not indicate that the proof had to be satisfactory to the plan administrator. *See also Nance v. Sun Life Assurance Co. of Can.*, 294 F.3d 1263, 1267-68 (10th Cir. 2002) (applying similar reasoning).

Ms. Cameron's argument is unavailing, however, because the CSW Plan contains language requiring proof satisfactory to the Committee. *See* Aplt. App., Vol. II, at 69 ¶ 5.6 ("The Participant will . . . be required to submit whatever evidence the Committee may require . . . as evidence of his Total Disability); at 70 ¶ 6.2 ("The Committee will . . . have the full authority and discretion to . . . resolve all questions relating to the right of a Participant to receive benefits under the Plan").

### d. Administration by BAC

Ms. Cameron next argues that she is entitled to de novo review because her claim was improperly decided by the BAC rather than the CSW Benefits Appeals Committee named in the Plan document. *See id.* at 72 ¶ 6.10. She contends that the purported substitution of the BAC as appellate decision-maker for the CSW Benefits Appeals Committee, made by CSW's corporate resolution dated July 25, 2001, *see id.* Vol. III, at 680-81, was ineffective because CSW failed to use the correct procedures to amend the Plan. *See id.* Vol. II at 75 ¶ 8.1. There is no indication that Ms. Cameron raised this argument before the district court; we therefore decline to consider it. *See, e.g., Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 812 (10th Cir. 2004) (stating this court generally does not consider issues raised for first time on appeal, particularly where fact questions are involved).

### e. Use of AEP Plan

Finally, Ms. Cameron argues that de novo review is appropriate because although the BAC recited that it reached its decision using the CSW Plan, it actually applied the AEP Plan. Since the AEP Plan is not in the record, she argues, it is impossible to determine whether that plan actually grants the required discretion to the Plan Administrator or other fiduciary. As we detail further, *infra*, the BAC properly applied the CSW Plan, which plainly does grant the required discretion. Therefore, we conclude that arbitrary and capricious review is the appropriate standard.

### 2. Application of CSW Plan to Disability Claim

Ms. Cameron contends that while the BAC cited the CSW Plan in its final denial letter, it actually applied the AEP Plan to her claim. As proof, she cites language in the final denial letter that she contends states that the 24-month period for application of the "any occupation" standard begins to run at the time of the date of disability. Under the CSW Plan, she notes, the 24-month period begins "immediately following the expiration of [the employee's five-month] Benefit Waiting Period." *Id.* Vol. II, at 64, ¶ 2.15.

The actual wording of the letter, however, does not bear out her assertion that the BAC applied the wrong plan. It reads, in pertinent part:

> Under the Central and South West Corporation Employees'
> Disability Income Plan, once the claimant has been disabled for a
> period exceeding 24 months, the disability must . . . reasonably be

expected to prevent her from engaging in *any* occupation for which she is reasonably qualified by training, education, background or experience. According to our records, Ms. Cameron's disability began October 3, 2000. Therefore, her ability to receive long-term disability benefits was evaluated using this definition of disability.

*Id.* Vol. III, at 600.

The key phrase is "once the claimant has been disabled for a period exceeding 24 months." Ms. Cameron reads this phrase as being inconsistent with the CSW Plan definition of "total disability," under which the 24-month period begins only *after* the five-month waiting period following the onset of disability. While it is true that in its earlier letters to Ms. Cameron, Kemper miscalculated the onset of the 24-month period by excluding the waiting period, there is no indication in this letter that the BAC perpetuated this error by applying the wrong plan definition.

First of all, the letter explicitly refers to the CSW Plan. One cannot reasonably infer from the immediately following use of the ambiguous phrase "has been disabled for a period exceeding 24 months," that the BAC did not in fact rely on the CSW Plan as it explicitly said it did. Moreover, the language it used is easily harmonized with the reference to the CSW Plan, if by "disabled" one reads "has begun receiving disability benefits." We conclude that is the only reasonable reading of the letter, for two reasons.

First, the letter was written on August 1, 2003. This means that by the time it was written, a full 24 months had expired *since the first date on which*

*Ms. Cameron received benefits*. In other words, both the five-month waiting period and the 24-month own occupation period had passed by the time the BAC wrote the letter. There is therefore no reason to believe that the BAC was laboring under a mistaken impression that the 24-month period included the five-month waiting period. Second, and more to the point, the letter refers to Ms. Cameron's "Date of Disability" as October 3, 2000, and her "Date of Long-Term Disability" as April 2, 2001, showing that the BAC was aware of the distinction between the two dates, and hence, the waiting period issue. *Id.* In short, even giving Ms. Cameron the benefit of every reasonable inference, the letter does not indicate that the BAC did not rely on the CSW Plan for its definition of disability.

Ms. Cameron further argues, without citation to authority, that even if the BAC properly applied the CSW Plan, "it is improper under any standard of review to determine that benefits should be terminated using one plan and then [to] deny her appeal using the terms of another plan." Aplt. Br. at 11. To accept Ms. Cameron's argument would be to conclude that reversal is required due to Kemper's erroneous citation of the AEP Plan in its earlier letters to her, regardless of whether this error was corrected on appeal by the BAC. But the CSW Plan provides that "the Benefits Appeals Committee will make *an independent determination* of the claimant's eligibility under the Plan" and that its determination is final and conclusive. Aplt. App., Vol. II, at 72, ¶ 6.10

(emphasis added). It is the BAC's independent decision that we review, as the Plan's final decision. As we have discussed, the evidence shows that this decision was reached under the CSW Plan.

### 3. Timing of Disability Determination

Ms. Cameron next contends that the Plan's decision should be reversed because when Kemper initially denied her claim under the "any occupation" standard, she was in fact still within the 24-month "own occupation" period. She argues that Kemper's decision was premature because the issue of her eligibility for continued benefits under the "any occupation" standard had not yet ripened. She also contends that no determination was made of her ability to perform any occupation as of the date the 24-month period ended.

As with the previous issue, the BAC's independent review puts to rest this claim of error. The BAC made its final and independent decision on August 1, 2003, long after the 24-month period had ended. In its decision, it stated, "insufficient evidence exists to demonstrate that Ms. Cameron *is* unable to perform work of any kind." *Id.*, Vol. III, at 600 (emphasis added). The BAC's use of the present tense, coupled with the independent nature of its review, demonstrates that a decision was made at the proper time concerning Ms. Cameron's ability to work under the "any occupation" standard.

**4. Disability Definition Under AEP and CSW Plans**

Finally, Ms. Cameron argues that the benefits denial should be reversed because the definition of "disability" in the AEP Plan differs from that contained in the CSW Plan. As we have explained, however, there is no evidence that the BAC failed to apply the CSW Plan definitions to Ms. Cameron's alleged disability in its independent determination of her claim.

## CONCLUSION

The arbitrary and capricious standard of review applies to the Plan's determination to terminate Ms. Cameron's benefits. She has failed to show that the Plan's determination that she did not meet the "any occupation" standard for total disability was arbitrary and capricious. The judgment of the district court is therefore AFFIRMED.

Entered for the Court

Robert H. Henry
Circuit Judge

-15-