Loran W. ROBBINS, et al.,
Plaintiffs-Appellees,

v.

B AND B LINES, INC.,
Defendant-Appellant.

No. 86–1863.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 8, 1986.

Decided Sept. 9, 1987.

---

Robert H. Cowan, Gracey, Maddin, Cowan & Bird, Nashville, Tenn., for defendant-appellant.

Thomas J. Angell, Cent. States Pension Fund, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Plaintiffs, trustees of the Central States, Southeast and Southwest Areas Pension Fund ("the Fund"), filed suit against B and B Lines, Inc.,[1] an Oklahoma motor carrier, to collect withdrawal liability payments pursuant to the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29 U.S.C. §§ 1381 *et seq.* The district court entered summary judgment for the plaintiffs, and B and B Lines appeals. We affirm.

I

The MPPAA provides that an employer who withdraws from a pension plan covered by its provisions becomes liable for a fixed amount designed to cover the employees' share of the vested, but unfunded, benefits. *Robbins v. McNicholas Transp. Co.*, 819 F.2d 682 (7th Cir.1987); *Robbins v. Pepsi-Cola Metropo. Bottling Co.*, 800 F.2d 641, 642 (7th Cir.1986); 29 U.S.C. § 1381(a). Upon withdrawal, the pension plans assess and notify employers of their withdrawal liability. *See McNicholas Transp. Co.*, 819 F.2d at 683; *Pepsi-Cola*, 800 F.2d at 642; 29 U.S.C. § 1382. Disputes over the assessed withdrawal liability, if unresolved following administrative review by the plan's sponsor, 29 U.S.C. § 1399(b)(2)(A), are subject to mandatory arbitration, 29 U.S.C. § 1401(a). If an employer fails to timely initiate arbitration,[2] the amounts demanded by the plan become due and owing; the plan may then file suit in state or federal court for collection of the amounts due. 29 U.S.C. § 1401(b)(1). Additionally, the plan may recover reasonable costs and attorney's fees arising from

1. The Fund originally filed suit against defendant-appellant, B and B Lines, and another carrier, Oklahoma Eastern Express, Inc. On April 18, 1986, the district court entered final judgment against B and B Lines pursuant to Fed.R. Civ.P. 54(b). The case against defendant Oklahoma Eastern Express is pending in the district court.

2. 29 U.S.C. § 1401(a) provides:
Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this Title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60–day period after the earlier of
(A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or
(B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title. The parties may jointly initiate arbitration within the 180–day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.

a suit to collect withdrawal liability. 29 U.S.C. § 1451(b), (e); 29 U.S.C. § 1132(g)(2).

B and B Lines operated as a motor carrier. It was required by its collective bargaining agreements with the Teamsters to contribute to the Fund. In July 1982, B and B Lines ceased operations and withdrew from the Fund. On December 20, 1983, the Fund notified B and B Lines that it had calculated B and B Lines' withdrawal liability to be approximately $662,000 and demanded payment. *See* 29 U.S.C. §§ 1382, 1399(b)(2)(A) and (B). The Fund attached to the demand letter a copy of the statutory review and dispute procedures including the arbitration procedure. By letter dated April 10, 1984, B and B Lines challenged the Fund's withdrawal liability calculations and requested the Fund to reconsider its assessment. On May 29, 1984, the Fund rejected B and B Lines' assertions of error in its withdrawal liability calculations, thereby commencing the sixty-day statutory period within which B and B Lines could seek arbitration of the withdrawal liability amounts. 29 U.S.C. § 1401(a)(1).

On July 27, 1984, Wade Cowan, counsel for B and B Lines, purportedly mailed[3] the Chicago office of the American Arbitration Association (the "AAA") a letter requesting arbitration of a withdrawal liability dispute between B and B Lines and the Fund.[4] No filing fee was enclosed with the letter; rather, the letter advised that "[a] company check covering the administrative fee of the American Arbitration Association will be forwarded to you shortly." The AAA,

however, has no record of B and B Lines' arbitration request nor of payment of the AAA filing fee. On June 1, 1984, the Fund filed suit in district court to collect the withdrawal liability. B and B Lines raised the pendency of arbitration as a defense. On September 5, 1985, the court entered summary judgment for the Fund. The court concluded that B and B Lines had not timely initiated arbitration because it failed to forward the AAA's filing fee with its alleged arbitration request.

## II

The sole issue in this case is whether B and B Lines' failure to timely pay the filing fee of the AAA rendered its request for arbitration untimely. Citing *International Ladies Garment Workers Union National Retirement Fund v. Rothauswer*, No. 84 C 1761, slip op. at 6–7 (S.D.N.Y.1985), the district court held that the letter requesting arbitration was inadequate as a matter of law: "A mere letter request ... in the absence of any formal action to initiate the arbitration ... is not sufficient." B and B Lines contends on appeal that the letter requesting arbitration was sufficient to initiate arbitration and that the district court erred in finding its arbitration request untimely.

The provision of the Fund's rules governing arbitration[5] provides:

ARBITRATION: Within sixty days ... either the withdrawn employer or the Central States Fund *may initiate an arbitration proceeding as provided herein*. The commencement of an arbitration proceeding is made by written

---

**3.** The affidavit of Wade Cowan indicates that the letter was mailed on July 27, 1984. The letter, though, bears the caption "Federal Express." B and B Lines has not proffered any receipt indicating that the letter was sent by Federal Express.

**4.** In pertinent part, this letter read: "B and B Lines, Inc. desires to initiate arbitration of a dispute between it and the Central States, Southeast and Southwest Areas Pension Fund concerning the assessment of withdrawal liability."

**5.** The MPPAA provides that arbitration shall be conducted according to the procedures promulgated by the Pension Benefit Guaranty Corporation (the PBGC). 29 U.S.C. § 1401(a)(2). Addi-

tionally, "... multiemployer plan[s] may adopt rules for other terms and conditions for the satisfaction of an employer's withdrawal liability...." 29 U.S.C. § 1399(c)(7). At the time this dispute arose, the PBGC had failed to promulgate comprehensive arbitration rules. Instead, the PBGC issued an opinion letter which stated:

[M]ultiemployer plan sponsors and employers may use any reasonable procedures [to arbitrate disputes], such as those established by the American Arbitration Association....

(PBGC Opinion Letter 82–32, Oct. 28, 1982); *see also Combs v. Western Coal Corp.*, 611 F.Supp. 917, 921 n. 1 (D.D.C.1985).

notice to the withdrawn employer in question, to the bargaining representative (if any) of the affected employees of the withdrawn Employer, to the Central States Fund and to the Chicago Regional Office of the American Arbitration Association. Such arbitration will be conducted, as much as possible, in accordance with the "Employee Benefit Plan Claims Arbitration Rules" administered by the American Arbitration Association *with the exception of the initial filing fee (which is to be paid by the party initiating the arbitration proceeding).*

(emphasis added.) These rules require a party who seeks to initiate arbitration to (1) notify the AAA and other interested parties, (2) follow the AAA rules as closely as possible, and (3) pay the initial filing fee. Further, the applicable AAA rule explicitly requires the arbitration request to be accompanied by the filing fee:

> The request for arbitration should briefly outline the nature of the claim. *The request must be accompanied* by a copy of the denial of claim form where available and *by a filing fee of $50.*

(emphasis added.) [6]

We agree with the district court that B and B Lines' failure to pay the AAA filing fee rendered the initiation of arbitration untimely. There is a clear distinction between a *request* for arbitration and the *initiation* of arbitration. *See Combs,* 611 F.Supp. at 921 ("The distinction between requesting arbitration and initiating arbitration is crucial.... Because defendant did not follow the rules ... [for] the initiation of arbitration, it simply did not initiate arbitration within the meaning of 29 U.S.C. § 1401."); *Rothauswer,* No. 84 C 1761, slip op. at 3 ("Rothauswer, by letter dated January 20, 1983, made what he believed to be a timely *request* for arbitration. ... However, he never took any steps to initiate arbitration proceedings."

**6.** The Fund cited the 1977 AAA rules as revised January 1, 1983, but failed to submit the 1977 rules. Neither the 1977 nor the 1983 rules were made part of the record before the district court. At oral argument, this court requested counsel to submit a copy of the 1977 rules. Because the AAA rules are incorporated by reference in the Fund's rules governing arbitration

(emphasis added)); *Board of Trustees of the Western Conference of Teamsters Pension Fund v. F.C. Parsons, Inc.,* 5 E.B.C. 2277 (W.D. Wash.1984).

The Fund's rules, read in conjunction with the AAA arbitration rules, explicitly require a party initiating arbitration to pay the initial filing fee. B and B Lines clearly knew of the filing fee requirement; its asserted letter to the AAA advises that a check covering the filing fee would be "forwarded ... shortly." As of March 7, 1985, more than seven months after the statutory deadline, the filing fee was unpaid and counsel for B and B Lines was still promising that the $100.00 AAA filing fee would be forthcoming. Record at 17.

Because we conclude that B and B Lines failed to follow the rules detailing how to initiate arbitration, we hold that B and B Lines did not timely initiate arbitration. The decision of the district court is affirmed.

and are referred to by both parties in their briefs, we take judicial notice of these rules pursuant to Fed.R.Evid. 201. *See E.I. DuPont de Nemours v. Grasselli Employees Independent Assoc. of East Chicago, Inc.,* 790 F.2d 611, 617 n. 2; 10 Moore's *Federal Practice* 201.60 (1976). The rules, as amended effective January 1, 1983, increased the filing fee to $100.00.