**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ELEPHANT BUTTE IRRIGATION
DISTRICT OF NEW MEXICO, et al.,

    Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF
THE INTERIOR, et al.,

    Defendants-Appellees.

No. 06-2282
(D.C. No. CIV-90-95-JP/KBM)
(D. New Mexico)

ORDER

Before **KELLY**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

Appellees' motion to publish the decision issued in this case on July 24, 2008, is

granted. A copy of the published decision is attached to this order.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

July 24, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

ELEPHANT BUTTE IRRIGATION
DISTRICT OF NEW MEXICO, and EL
PASSO COUNTY WATER
IMPROVEMENT DISTRICT NO. 1 OF
TEXAS,

     Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF
THE INTERIOR; DIRK
KEMPTHORNE, Secretary of the
Interior; WILLIAM E. RINNE, Acting
Commissioner of Reclamation;  RICK
GOLD, Regional Director of the Bureau
of Reclamation, ANITA LOCKWOOD,
Secretary of the State of New Mexico; and
GARREY CARRUTHERS, Governor of
the State of New Mexico,

     Defendants-Appellees.

No. 06-2282

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-90-95-JP/KBM)**

---

Steven Hernandez of Hubert & Hernandez, P.A., Las Cruces, New Mexico, and James M.
Speer, Jr., El Paso, Texas (Joshua A. Myers, Lee E. Peters and Stephen A. Hubert of
Hubert & Hernandez, P.A., Las Cruces, Mexico; and Timothy J. DeYoung of Modrall,
Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico, with them on the
briefs), for Plaintiffs-Appellants.

Kathryn E. Kovacs, U.S. Department of Justice, Environmental & Natural Resources
Division, Appellate Section, Washington, D.C. (Matthew J. McKeown, Acting Assistant
Attorney General, U.S. Department of Justice, Washington, D.C.; and Gary K. King,
Attorney General, and Christopher D. Coppin, Assistant Attorney General, State of New

Mexico, Albuquerque, New Mexico, with her on the brief. Chris Rich, U.S. Department of the Interior, Salt Lake City, Utah; and John W. Zavitz, Assistant United States Attorney, Albuquerque, New Mexico, of Counsel), for Defendants-Appellees.

Before **KELLY**, **SEYMOUR** and **MURPHY**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Plaintiffs Elephant Butte Irrigation District of New Mexico and El Paso County Water Improvement District No. 1 of Texas (collectively the Districts) appeal the district court's final judgment on the only remaining count in this case, Count II of the complaint. On a summary judgment motion, the court held in favor of defendants, the United States Department of the Interior and various federal officials (collectively DOI). For the reasons explained below, we affirm.

**I**

The facts of this case have been set forth thoroughly in both *Elephant Butte Irrigation Dist. v. Dep't of the Interior*, 160 F.3d 602 (10th Cir. 1998) ("*EBID I*"), and *Elephant Butte Irrigation Dist. v. Dep't of the Interior*, 269 F.3d 1158 (10th Cir. 2001) ("*EBID II*"). In particular, *EBID II* describes the historical and legislative background of reclamation law and the authorization of the project at issue. We discuss only those facts relevant to our consideration of Count II.

The Districts filed a complaint in 1990, challenging, *inter alia*, DOI's distribution of certain revenues from the Rio Grande Reclamation Project (the project). As relevant here, Count I alleged that the Districts were entitled to the revenues listed in Section 4-I of the Fact Finder's Act of 1924, 43 U.S.C. § 501 (Section 4-I). Count II

challenged DOI's lease of project lands to the State of New Mexico for recreational purposes and sought an order reforming the lease to provide the Districts with profits generated under the lease pursuant to Section 4-I. Count VI similarly alleged that a Memorandum of Understanding by which DOI leased project lands to the Bureau of Land Management for grazing was unlawful because it would return no profit to the Districts.

The district court granted summary judgment in favor of the Districts on Count I, and in favor of DOI on Count VI. The district court also granted the Districts' motion for partial summary judgment on Count II, but held that disputed issues of fact remained to be decided. It then entered final judgment on Counts I and VI under FED. R. CIV. P. 54(b). This Court affirmed on both Counts I and VI, holding that the Districts were entitled under Section 4-I to profits from the leasing of project grazing and farm land, but that the Bureau of Reclamation (BOR) had no duty "to administer and manage the water project lands in such a way that profits are generated." *EBID II*, 269 F.3d at 1166.

After the decision in *EBID II* and the death of the presiding district judge, the district court invited DOI to renew its motion for summary judgment on Count II. Thereafter, the court granted in part and denied in part DOI's renewed motion for summary judgment on Count II, holding that the Districts are entitled under Section 4-I to any profits arising from the recreation lease, but that the recreation lease had yielded no profits. The court further concluded that under the holding of *EBID II*, DOI has no obligation to generate such profits. The court issued an order reforming the recreation lease with the State of New Mexico to provide the Districts with any profits generated by the lease. After an accounting, the court entered a final judgment for the Districts in the amount of $9,009.19, representing the net profit it determined they were owed.

The Districts filed a motion for reconsideration, asking the district court to review

Count II under their theory that the recreation lease violated the United States' covenants of good faith and fair dealing in the contracts it had entered into with the Districts in 1937 (1937 Contracts). The court declined to address the contract theory, concluding the Districts had failed to timely raise the issue. The court denied a further attempt to raise the contract argument in the Districts' follow-up motion for clarification of the court's order denying reconsideration.

On appeal, the Districts' contend the district court erred in refusing to consider their contract theory of recovery for Count II and in holding that DOI has no duty to generate profits from the recreation lease. They also maintain that disputes of fact and the law of the case doctrine precluded the district court from deciding the merits of Count II on summary judgment.

## II

We review the district court's denial of the motion to reconsider for abuse of discretion.[1] *See Geddes v. United Staffing Alliance Employee Med. Plan*, 469 F.3d 919, 928 (10th Cir. 2006) ("Whether to allow supplemental briefing on a newly-raised issue is a 'supervision of litigation' question we review for abuse of discretion."); *Price v. Philpot*, 420 F.3d 1158, 1167, 1167 n.9 (10th Cir. 2005) (reviewing denial of motion for reconsideration for abuse of discretion). "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no

---

[1]The Districts contend our review is *de novo*, analogizing to a dismissal based on a failure to state a claim. *See United Steelworkers v. Or. Steel Mills, Inc*., 322 F.3d 1222, 1228 (10th Cir. 2003). That is clearly not the posture of the appeal with respect to the contract claim. Instead, the Districts directly challenge the district court's order on reconsideration, in which the court refused to hear argument on the Districts' contract theory of recovery, not because they failed to state a claim but because they failed to do so in a timely fashion.

rational basis in the evidence for its ruling." *Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1299 (10th Cir. 2006) (internal quotations omitted). We review de novo both the district court's statutory interpretation, *Paper, Allied-Industrial, Chemical & Energy Workers v. Continental Carbon Co.*, 428 F.3d 1285, 1293 (10th Cir. 2005), and its grant of summary judgment, *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 621 (10th Cir. 1995).

***Contract Claim***

We explained the genesis of the 1937 contracts in *EBID II*:

In 1937, Congress enacted a law authorizing the Secretary of the Interior to contract with the water districts for the purpose of terminating their leases of power privilege. *See* Interior Department Appropriations Act of 1938, ch. 570, Pub.L. No. 75-249, 50 Stat. 564, 593. Leases of power privilege had previously been granted by the Secretary to the water districts pursuant to an earlier Act of Congress. In these leases, the federal government gave the water districts the right to build power facilities and to use the proceeds from those facilities to repay their construction obligations. However, the water districts never executed their rights to build power facilities on water project lands. The 1937 Act was designed to return to the federal government the right to build power facilities while giving the water districts a distinct benefit: relief from the obligation to repay their outstanding construction costs. Both El Paso and the Elephant Butte Irrigation District entered into contracts with the Secretary of the Interior in accordance with the 1937 Act.

*EBID II*, 269 F.3d at 1162. On appeal, the Districts claim "[t]he terms of the 1937 Contracts created duties that prevent the Secretary [of DOI] from arbitrarily destroying the Districts' right to credits under Subsection I. The Subsection I benefits were an essential element of the consideration running to the Districts[,] and the Contracts cannot now be interpreted as if the Subsection I rights do not exist. . . ." Aplt. Br. at 25. To support their contention that their contract claim is not new, the Districts cite to a number of pleadings in which the 1937 Contracts were referenced. However, a close review of each of those pleadings, other than the complaint, clearly shows that the arguments

-5-

relating to the contracts were statutory and not contractual in nature. As for the complaint, the District failed to pursue any contract claim they may have asserted there.

In the pretrial order, for example, the Districts contended that the recreation lease violated the government's fiduciary duty to them, exceeded DOI's statutory mandate, failed to confer any benefit to the project's beneficiaries, and that they had standing to challenge the lease because they had vested rights to revenues. While they made some general assertions of breach of contract, they made no claim that the lease constituted a breach of the covenants of good faith and fair dealing in the 1937 contracts. The Districts were obliged to spell out any breach of contract claim "with specificity and clarity" in the pretrial order. *See Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002). This is so because "'the pretrial order is treated as superceding the pleadings and establishing the issues to be considered at trial.'" *Id.* at 1215 (quoting 6A FEDERAL PRACTICE & PROCEDURE § 1522); FED. R. CIV. P. 16(e) (the pretrial order "controls the course of the action unless the court modifies it").

The Districts passed up additional opportunities to expressly raise a contract theory during the extensive summary judgment briefing. While the Districts are correct that they *mentioned* the 1937 contracts in the first round of summary judgment briefing on Count II in 1994, their only theory of recovery was that the DOI did not have statutory authority to give revenues to the State under the recreation lease. Aplt. App., vol. IV at 996-97. Their opening brief argued, "[i]n Count II, Plaintiffs contend that the Federal Defendants acted beyond the statutory authority granted to them" and that the 1962 Act authorizing construction and leasing to the State of recreational facilities at Elephant Butte and Caballo Reservoirs "did not authorize the Federal Defendants to assign these revenues to the State Defendants." *Id.* at 1000-01. This was so, they contended, because "[p]laintiffs

are entitled to Subsection I revenue credits from all Project lands including those surrounding the reservoirs." *Id.* at 1003. For relief, they sought *only* a declaration that the recreation lease is *ultra vires* or, in the alternative, that the recreation lease be reformed to give them Section 4-I revenues. *Id.* at 1001. In their brief in response to DOI's motion for summary judgment on Count II, the Districts reiterated that "[t]he issue is whether there was actual statutory authority for the provisions in the lease agreement concerning Project revenues." *Id.* 1077-78.

Even if the various references to the 1937 contracts in the Districts' 1994 summary judgment briefs could be read as implying a breach of contract theory of some kind, those references were not sufficient to put DOI or the court on notice that the Districts intended to assert such a theory. In its discussion of Count II in its 1997 opinion, the district court did not mention the 1937 contracts. When the Districts filed a motion for clarification of that opinion in 1999, they did not present a breach of contract theory. Nor did the district court mention the 1937 contracts in its order granting that motion in part. Aplt. App. 1156-58; *cf. Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991) ("The district court's opinion does not discuss the issue at all, from which we must conclude that it did not regard the issue as properly before it.").

In the second round of summary judgment briefing on Count II, the Districts again mentioned the 1937 contracts, but they did not present a breach of contract theory. To the contrary, they affirmatively asserted the contracts were not relevant because Section 4-I is a statutory right that did not have to be granted in a contract. Aplt. App., vol. V at 1390 ("Whether Subsection I Benefits Are Based On Statute Or Contract Is Irrelevant"); *id.* at 1391 ("Subsection I rights are statutory"); *id.* at 1404 ("The Subsection I rights of the Irrigation Districts are secured by statute and there is no requirement to 'secure' or

-7-

'bargain' for them by contract."); *see also id*. at 1379 n.2 (asserting that the district court had held their right to Section 4-I revenues was "statutorily based," not contractual). Not surprisingly, then, the district court did not mention the 1937 contracts in its 2003 opinion on Count II. Aplt. App., vol. VI at 1531-44. In their motion for reconsideration of that opinion, filed thirteen years after the complaint, the Districts argued for the first time that the court "ignores the covenant of good faith and fair dealing" and "emasculates a great part of the consideration bargained for by the Districts in the [1937] Contracts." *Id.* at 1590.

A district court does not abuse its discretion in refusing to consider a theory raised for the first time at an advanced stage of litigation. In *Geddes*, 496 F.3d at 928, for example, the defendant raised an issue for the first time at oral argument on the plaintiff's summary judgment motion. The defendant had mentioned related points earlier, but "failed to argue the . . .issue explicitly." *Id.* We held the district court did not abuse its discretion in refusing to consider the new issue "at the late juncture when it was raised." *Id*. Like the defendant in *Geddes*, the Districts here did not explicitly raise their contract theory in a timely manner, but instead belatedly sought to "bootstrap" their new argument onto a broader theory of statutory interpretation. *See id*. Indeed, the Districts were considerably tardier here than the defendant in *Geddes* because they failed to explicitly raise their contract theory until their motion for reconsideration of the district court's *second* summary judgment ruling on Count II. The district court did not abuse its discretion in holding that the contract theory of recovery was waived.[2]

---

[2]Because we agree with the district court that the Districts waived any contract claim, we need not address the DOI's contention that the United States did not waive its sovereign immunity with respect to the contract claims, or its alternative contention that any contract claim would be barred by the relevant statute of limitations.

***Statutory Interpretation***

In their continued effort to gain profits from the recreation leases, the Districts contend the applicable statutes impose a business standard on the Secretary in managing project lands, even if they don't impose a fiduciary duty. They assert the district court erred in holding to the contrary. Given our opinion in *EBID II*, we disagree.

A brief history of Count VI and the rulings thereon are necessary to explain why the district court appropriately extended the analysis of Count VI to Count II. Count VI challenged the validity of the lease agreement between DOI agencies for management of grazing lands within the Districts. The Districts asserted the recreation lease was not in the best interest of the project beneficiaries because it resulted in no consideration to them. Prior to the DOI lease agreement, the Districts had received credits for the lease of grazing lands. The Districts based Count VI on the Secretary's alleged duty to manage the grazing lands "on a sound operative and business basis" as set out in the Omnibus Adjustment Act of 1926, 43 U.S.C. §423f (OAA). They contended that this statutory language, combined with that of Section 4-I, imposed a fiduciary duty upon the government to generate profits in managing the grazing leases. We held in *EBID II* that neither the plain language of the acts nor their legislative history indicated Congressional intent to impose a fiduciary duty on the DOI. In doing so, we said:

> The plain language of Section 4-I and the OAA simply does not lend itself to the interpretation which the water districts argue it should be given. *First, we do not agree that the DOI is required to administer and manage the water project lands in such a way that profits are generated.* Although Section 4-I does refer to profits from grazing leases, that provision only directs how such profits, if any, are to be distributed and does not require that profits in fact be made. 43 U.S.C. § 501. *Second*, we agree with the district court that Section 4-I "does not create a fiduciary duty to the Districts." Likewise, the OAA does not create such a duty. *Although one provision of the OAA states that the purpose of the act is "the rehabilitation of the several reclamation projects and the insuring of their future success*

-9-

*by placing them upon a sound operative and business basis,"* 43 U.S.C. §
423f (1994), *and directs the DOI to administer those sections of the act "to
those ends,"* id., *this language, without more, does not create a fiduciary
duty in the DOI towards the water districts.*

We also observe that the legislative history of the two acts relied
upon by the water districts further undercuts their argument. As we discuss
above, these statutes were enacted by Congress in an attempt to rescue and
rehabilitate the federal irrigation projects, which had fallen on hard times at
several different junctures during the first half of the Twentieth Century.
Congress's concern, stated clearly in the fact finders' report and various
statutes, was that the reclamation fund was becoming insolvent because the
water districts were not repaying their obligations to the federal
government. We do not believe that Congress was attempting to put the
water districts under the protective care of the DOI, but rather was simply
trying to find a way to help the water districts repay the money that they
owed the federal government so that the reclamation fund would have cash
in its coffers. *Id.* To that extent, the water districts are correct in terming
Section 4-I an "entitlement" given to the water districts by the federal
government. But the creation of an entitlement is different from the
creation of a fiduciary duty on the part of the DOI towards the water
districts. . . .We can discern no congressional intent to create such a duty in
the statutes or the history surrounding their enactment.

*EBID II,* 269 F.3d at 1166-67 (internal citations omitted) (emphasis added).

Contrary to the Districts' current argument, the factual differences in the Count II

and VI do not affect the outcome. Under both counts, the same two statutes apply to

determine whether the Secretary has a fiduciary duty, or some lesser duty stemming from

a business acumen standard, to manage the project lands so as to generate a profit. This is

a question of pure statutory interpretation. In an attempt to undercut this conclusion, the

Districts argue that the grazing lease scheme in Count VI had no potential for profits

whereas the recreation leases had great potential. The greater potential for profits could

not have been envisioned when the statutes were enacted because no recreation leases

were in play at that time. The DOI either has a duty under the acts to generate profits or it

does not, regardless of the type of lease, and we held in *EBID II* that it does not. The

district court correctly extended that reasoning to Count II.

-10-

*Material Disputes of Fact*

The Districts argue that material disputes of fact precluded the district court from deciding Count II on summary judgment. Again, we disagree. Many of the facts the Districts suggest are material go to the contract claim, which we have already determined cannot be pursued at this late stage of the litigation. More importantly, the Districts failed to file a statement of disputed issues of material fact or an affidavit demonstrating the need for further discovery in the district court.

For example, the Districts claim that the accuracy of the accounting DOI prepared at the direction of the district court was a disputed issue of fact that precluded summary judgment and necessitated further discovery. The district court rejected the Districts' objections to the accounting. In particular, the court was not persuaded by the Districts' "concerns [about] possible factual disputes," pointing out that they failed to identify the parts of the accounting that they could not understand, failed to seek an explanation of those parts from DOI, declined "informal opportunities to discover the facts that underlay the accountings," failed to request additional time to review the accounting, failed to attach an affidavit documenting the need for additional discovery, App., vol. VI at 1748, and thus "failed to show a legitimate need for discovery," *id*. at 1749.

Under FED. R. CIV. P. 56, a party opposing a motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." FED. R. CIV. P. 56(e)(2). The rule specifically provides how an opposing party may comply with the rule if it needs discovery. "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the

-11-

court may: (1) deny the motion; (2) order a continuance to enable . . . discovery to be undertaken; or (3) issue any other just order." FED. R. CIV. P. 56(f). As we have made clear, "the nonmovant must carry its burden in the district court in a timely fashion pursuant to Rule 56(e) . . . or explain why it cannot pursuant to Rule 56(f). Otherwise, the nonmovant acts, or fails to act, at its peril." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (internal citation omitted); *see also Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006) ("A nonmoving party wishing to invoke the protections of Rule 56(f) must attempt to do so by submitting an affidavit in direct response to a motion for summary judgment, not following the district court's disposition of that motion."). Given the Districts' failure to comply with Rule 56, the district court's determination in favor of DOI was entirely proper.

### *Law of the Case*

Finally, the Districts contend the district court violated the law of the case doctrine by deciding Count II on summary judgment after the previous judge had decided it was necessary to conduct discovery and hold a trial. Until the district court entered its final judgment on Count II, however, it was free to revisit its earlier rulings. FED. R. CIV. P. 54(b) expressly allows for revision of an interlocutory order before entry of final judgment.

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

*Id.* Thus, "every order short of a final decree is subject to reopening at the discretion of the district judge." *Price*, 420 F.3d at 1167 n.9 (internal quotations and citation omitted).

The district court did not enter a final appealable judgment on Count II until July

-12-

2006. Neither the first opinion on Count II in 1997 nor the 1999 judgment on Counts I, V and VI entered under Rule 54(b) were final as to Count II. *See* Aplt. App., vol. IV at 1136, 1159. The district court therefore retained discretion to revisit the 1997 opinion regarding Count II.

We **AFFIRM**.