**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 25, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROSA DITUCCI, an individual; STEVEN
R. LAROZA, an individual; DEBRA A.
LAROZA, an individual; BRUCE I.
ROSE, an individual; MAUREEN A.
ROSE, an individual; SANFORD
ROBERTS, an individual; HELAINE B.
ROBERTS, an individual; RUSSELL E.
HERTRICH, an individual; FRED JACOB,
an individual; EDWARD A.
HENNESSEY, an individual; RUSSELL
E. HERTRICH REVOCABLE TRUST;
SANFORD ROBERTS REVOCABLE
TRUST; HELAINE B. ROBERTS
REVOCABLE TRUST; FRED JACOB
LIVING TRUST; EDWARD A.
HENNESSEY 2001 REVOCABLE
LIVING TRUST; CAMAC, a Kansas
corporation; BLUSH PROPERTY, a
Florida limited liability company,

     Plaintiffs - Appellees,

v.

FIRST AMERICAN TITLE
INSURANCE; KIRSTEN PARKIN,

     Defendants - Appellants,

and

WILLIAM BOWSER, an individual;
SCOTT RUTHERFORD, an individual;
ROCKWELL DEBT FREE PROPERTIES,
a Utah corporation; ROCKWELL TIC, a
Utah corporation; NOAH
CORPORATION, a Utah corporation;

No. 21-4120
(D.C. No. 2:19-CV-00277-TC-JCB)
(D. Utah)

ROCKWELL INDIANAPOLIS, a Utah limited liability company,

Defendants.

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **BACHARACH**, and **MORITZ**, Circuit Judges.[**]

_____

First American Title Insurance Company and Kirsten Parkin (Defendants) appeal the denial by the United States District Court for the District of Utah of their motion to compel Plaintiffs to arbitrate Plaintiffs' claims against Ms. Parkin and the denial of their motion to reconsider that ruling. On appeal the parties do not dispute that Indiana contract law applies, that the title insurance policy (the Policy) issued by First American is a valid contract that binds Plaintiffs and First American as signatories, and that First American may compel arbitration of Plaintiffs' claims against it under the Policy's arbitration clause. The only contested issue before us is whether either Defendant may compel Plaintiffs to arbitrate their claims against Ms. Parkin. We have jurisdiction to hear this interlocutory appeal under 9 U.S.C.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

§ 16(a)(1)(C) and 28 U.S.C. § 1291. We affirm, largely because of Defendants' failure to adequately present or preserve their arguments.

## I.    BACKGROUND

According to the third amended complaint (the Complaint), which is the operative pleading in this case, Plaintiffs purchased tenant-in-common interests in commercial real estate in Carmel, Indiana, from a nonappealing defendant, Rockwell Indianapolis LLC (Rockwell). Each sale was effected through a purchase and sale agreement (PSA). Each PSA contained an arbitration provision stating, "Any dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association." Aplts. App. at 426. Also, upon each Plaintiff's purchase of an interest, Ms. Parkin—an employee of First American who served as the escrow agent for the purchases—added the buyer as an insured party to the Policy, which covered the entire property and was originally issued by First American to Rockwell. The Policy specifies that either First American or an insured may demand arbitration "pursuant to the Title Insurance Arbitration Rules of the American Land Title Association" (the ALTA Rules). *Id.* at 520.[1] In turn, Rule 3

---

[1] The arbitration clause included in the Policy states in full:

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a

of the ALTA Rules "incorporate[s] by reference the applicable AAA Rules. Specifically, the Consumer Arbitration Rules apply in all instances except where neither party is a consumer, in which case the Commercial Arbitration Rules apply."[2] We need not decide whether the AAA Consumer Rules or the AAA Commercial Rules are applicable here because the relevant language is the same in both. Rule 7(a) of the AAA Commercial Rules and Rule 14(a) of the AAA Consumer Rules state: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any

> policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

Aplts. App. at 520.

[2] Although the parties have referred to, paraphrased, and partially quoted the ALTA Rules and the AAA Rules, the rules themselves are not in the record. We therefore take judicial notice of the rules. *See Robbins v. B & B Lines, Inc.*, 830 F.2d 648, 651 n.6 (7th Cir. 1987); Fed. R. Evid. 201(b)(2). We select the versions of the rules in effect at (and after) the time of the first purchase by a Plaintiff of a tenant-in-common interest in June 2018—namely, the 2017 ALTA Rules (available for download at https://www.alta.org/policy-forms/arbitration.cfm); the AAA Commercial Rules that took effect on October 1, 2013 (available at https://adr.org/sites/default/files/Commercial%20Rules.pdf); and the AAA Consumer Rules that took effect on September 1, 2014 (available at http://www.adr.org/sites/default/files/Consumer_Rules_Web_2.pdf). A new version of the AAA Commercial Rules took effect on September 1, 2022 (available at https://www.adr.org/sites/default/files/Commercial_Rules_Web.pdf). The sole change to Rule 7(a) is the addition at the end of the sentence of the language "without any need to refer such matters first to a court." Although we presume that the 2013 version applies (because it was the version that existed when each Policy was signed), our decision here would be the same under the 2022 version.

objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

Claiming that the sales to them were part of a fraudulent scheme, Plaintiffs sued several parties on various theories of relief. When Plaintiffs added them as defendants, First American and Ms. Parkin moved to compel arbitration.[3] First American's argument for compelling arbitration of Plaintiffs' claims against it was straightforward: the Policy was a contract between Plaintiffs and First American, and the dispute here falls within the Policy's broad arbitration clause applying to "any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy." Aplts. App. at 520.

Ms. Parkin, however, could not make the same argument under the Policy—even though the Complaint alleges that "[a]t all relevant times [Ms.] Parkin was an agent of [First American] and acted on its behalf," *id.* at 319—because she was not a signatory to the Policy. Instead, to support their position that the claims against Ms. Parkin must also be arbitrated, Defendants' motion to compel relied primarily on an equitable-estoppel theory originating in federal-court arbitration cases (so we will call it *federal equitable estoppel*) and adopted by the Indiana Court of Appeals in *German*

---

[3] The Complaint asserts five claims against First American and Ms. Parkin: (1) negligence; (2) breach of fiduciary duty; (3) unjust enrichment; (4) civil conspiracy; and (5) materially aiding state-law securities fraud. Plaintiffs make similar types of claims against the other defendants.

*American Financial Advisors v. Reed*, 969 N.E.2d 621, 627–28 (Ind. Ct. App. 2012), and *Doe 1 v. Carmel Operator, LLC*, 144 N.E.3d 743, 757–58 (Ind. Ct. App. 2020) (*Doe I*).[4] Federal equitable estoppel applied "'when the signatory to the contract containing an arbitration clause raise[d] allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *Reed*, 969 N.E.2d at 628 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).[5] According to Defendants, Ms. Parkin—a "nonsignatory" accused of misconduct "substantially interdependent" with that of First American, Aplts. App. at 350—could use the theory of equitable estoppel applied in *Reed* and *Doe I* to compel arbitration under the Policy of Plaintiffs' claims against her. At the end of this discussion in the motion to compel, Defendants added a sentence asserting that First American itself could compel Plaintiffs to arbitrate their claims against Ms. Parkin.

Separately, Defendants argued that Plaintiffs' claims against both Defendants were subject to arbitration under the arbitration clause included in each PSA, even

---

[4] In accordance with the nomenclature used by the parties, we distinguish this federal theory of equitable estoppel from Indiana's "traditional" theory of equitable estoppel. The latter requires a "party claiming equitable estoppel [to] show its (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." *Money Store Inv. Corp. v. Summers*, 849 N.E.2d 544, 547 (Ind. 2006) (internal quotation marks omitted).

[5] *Reed* also endorsed another federal-court-developed theory of equitable estoppel—not relied upon by Defendants here—that "'applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.'" *Reed*, 969 N.E.2d at 628 (quoting *MS Dealer*, 177 F.3d at 947).

though neither First American nor Ms. Parkin was a signatory to any of the PSAs. This claim likewise relied upon the theory of federal equitable estoppel applied in *Reed* and *Doe I*.

After briefing and oral argument on the motion to compel had concluded—but before the district court had ruled—the Indiana Supreme Court reversed *Doe I* and expressly disapproved of *Reed*'s adoption of federal equitable estoppel. *See Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 524 (Ind. 2021) (*Doe II*). The court also held, on the facts of that case, that the nonsignatory had failed to satisfy "the traditional elements of equitable estoppel," *id.* at 526, and that "the record d[id] not support a finding of an agency relationship" between the nonsignatory and a signatory, *id.* at 522.

About six weeks later the district court granted in part and denied in part Defendants' motion to compel. *See DiTucci v. Ashby*, No. 2:19-cv-277-TC-JCB, 2021 WL 778579, at *1 (D. Utah Mar. 1, 2021) (*DiTucci I*). The court held that the Policy authorized First American to compel Plaintiffs to arbitrate their claims against it. *See id.* at *6–9. But the court rejected Ms. Parkin's attempt to compel arbitration under the Policy, because she was not a signatory and her theory of federal equitable estoppel was untenable post-*Doe II*. *See id.* at *5–6.

Defendants filed a motion asking the court to reconsider its refusal to compel arbitration of Plaintiffs' claims against Ms. Parkin. They raised several grounds pertinent to this appeal. To begin with, they faulted the district court for "not address[ing]" their argument in their motion to compel "that First American itself

7

c[ould] compel Plaintiffs to arbitrate their claims against Ms. Parkin" under the Policy's "broad arbitration clause." Aplts. App. at 671. The argument in the motion to compel had relied on the Indiana Court of Appeals decision in *Medical Realty Associates, LLC v. D.A. Dodd, Inc.*, 928 N.E.2d 871, 875 (Ind. Ct. App. 2010), which held that in the circumstances of that case a party to an arbitration agreement could compel an opposing party to arbitrate its claims against a nonparty. Also, as part of this argument in the motion for reconsideration Defendants raised for the first time the contention that an arbitrator, rather than the district court, should decide whether the claims against Ms. Parkin should be arbitrated. They contended that the arbitration provision in the Policy, which incorporated by reference the AAA Rules (via the provision's incorporation by reference of the ALTA Rules, which in turn incorporated the AAA Rules) was "proof [that the parties] intended to arbitrate questions of arbitrability," and that therefore the court was "'obliged to eschew consideration of the arbitrability of the claims and to grant' First American's motion to compel arbitration of Ms. Parkin's claims." Aplts. App. at 673 & n.2 (quoting *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1292 (10th Cir. 2017)).

Defendants' motion for reconsideration also argued for the first time that (1) Plaintiffs were bound under traditional equitable estoppel to arbitrate the dispute with Ms. Parkin and (2) Ms. Parkin was entitled to compel Plaintiffs to arbitrate their dispute because she was in privity with First American. To justify their failure to make those two arguments in their original motion to compel arbitration, they contended that the two newly raised theories were not available before the opinion in *Doe II*, which

8

"changed the requirements . . . under Indiana law" for "non-signatory enforcement of arbitration clauses." *Id.* at 673.

The district court denied the motion for reconsideration but stayed the claims against Ms. Parkin because of preclusion concerns. *See DiTucci v. Ashby*, No. 2:19-cv-277-TC-JCB, 2021 WL 4217332, at *1 (D. Utah Sept. 16, 2021) (*DiTucci II*). The court rejected Defendants' traditional-estoppel and privity arguments on the ground that they were improper for a motion for reconsideration because they could have been raised earlier. It disputed Defendants' contention that it could not have raised a traditional equitable-estoppel argument before *Doe II*, saying that "[t]he Indiana Supreme Court did not announce a previously unavailable ground to argue that a signatory is estopped from avoiding arbitration of its claims against a non-signatory. The [*Doe II*] court simply found [that] the record did not support a finding of equitable estoppel." *Id.* at *3. Likewise, the court said that Defendants' privity argument "was available to them at the time they filed their motion to compel," and *Doe II* "did not announce a new rule regarding privity. In fact, the *Doe II* court cited to a 1996 decision to support its statement that 'ordinarily, only contracting parties, or those in privity with them, have rights under an arbitration agreement.'" *Id.* (brackets omitted) (quoting *Doe II*, 160 N.E.3d at 522 (citing *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314–15 (Ind. 1996))).

On the other hand, the court acknowledged that in *DiTucci I* it had "overlooked" Defendants' "abbreviated argument based on *Medical Realty*" and therefore it "agree[d] to consider it now." *Id.* at *4. But it held that *Medical Realty* was factually

9

distinguishable. *See id.* at *4–5. The district court did not address Defendants' *Belnap*-based argument that the arbitrator should determine whether the dispute was arbitrable.

Defendants timely appealed both *DiTucci I* and *DiTucci II*.

## II.    DISCUSSION

### a.  Defendants' Motion to Compel (*DiTucci I*)

We review de novo the district court's denial of Defendants' motion to compel Plaintiffs to arbitrate their claims against Ms. Parkin. *See Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021). Defendants first argue that they should prevail on their motion to compel either (1) under the PSAs or the Policy by applying Indiana's "'traditional' theory of equitable estoppel," Aplts. Br. at 11, or (2) under the Policy because Ms. Parkin was "in privity with First American" as the company's "employee who managed each of Plaintiffs' [tenancy-in-common] transactions," *id.* at 21. But Defendants made no traditional-estoppel or privity arguments in their briefing on the motion to compel, thus forfeiting those arguments for purposes of that motion. *See Fish v. Kobach*, 840 F.3d 710, 729 (10th Cir. 2016) (argument not raised before the district court is forfeited). And they waived those arguments on appeal by failing to argue plain error. *See id.* at 729–30.

As for Defendants' *Medical Realty*-based argument that a party to an arbitration agreement may be able to compel the opposing party to arbitrate its claims against a nonparty, the district court agreed to consider it in *DiTucci II*, so we discuss the issue further when we examine the motion to reconsider in the next part of this opinion. But we conclude that the district court did not err in failing to grant the motion to compel

arbitration insofar as the motion relied on *Medical Realty* as ground for authorizing First American to compel Plaintiffs to arbitrate their dispute with Ms. Parkin. As we proceed to explain, Defendants forfeited their *Medical Realty*-based argument through inadequate briefing on the motion to compel in district court.

"To avoid forfeiture" of an argument, a party must "fairly present the district court with the substance of" the argument. *Stender v. Archstone-Smith Operating Tr.*, 910 F.3d 1107, 1112 (10th Cir. 2018). An issue raised "only in a vague and ambiguous way" or "in a perfunctory and underdeveloped manner" is not sufficiently "preserve[d] . . . for appellate review." *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1275 (10th Cir. 2019) (internal quotation marks omitted); *see Thompson R2–J Sch. Dist. v. Luke P. ex rel. Jeff P.*, 540 F.3d 1143, 1148 n.3 (10th Cir. 2008) (Gorsuch, J.) ("Under our controlling precedent, this suggestion, appearing only in a fleeting sentence in an appellate brief, is too inadequately developed to be meaningfully addressed and is deemed waived."). The grounds for forfeiture are particularly compelling when the undeveloped argument is "misleadingly placed under a heading for a different issue," *Nixon v. City & County of Denver*, 784 F.3d 1364, 1370 (10th Cir. 2015). In the motion to compel, Defendants' one-sentence argument that *First American* could compel Plaintiffs to arbitrate their dispute with Ms. Parkin appeared in a section of their pleading entitled "*Ms. Parkin* Can Compel Arbitration." Aplts. App. at 349 (emphasis added). Indeed, the sentence did not appear until the final paragraph in that section, and not until the end of that paragraph—a paragraph that began with the sentence, "Equitable estoppel allows a *nonsignatory* to compel arbitration when the signatory

11

alleges substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories to the contract containing the arbitration clause." *Id.* at 350 (emphasis added). Only then does the reader find the following sentence:

> Furthermore, First American itself can compel Plaintiffs to arbitrate their claims against Ms. Parkin. *See Medical Realty Assoc., LLC v. D.A. Dodd, Inc.*, 928 N.E.2d 871, 875 (Ind. Ct. App. 2010) (signatory defendant was permitted to require signatory plaintiff to arbitrate claim against nonsignatory where arbitration provision used "broad sweeping phrases such as 'any claims' and 'all claims'" and did not specifically exclude the claim against the nonsignatory).

*Id.* Burying an argument in that fashion, whether intentional or not, is to forfeit any right to have the court consider it. When a party has forfeited an argument by failing to adequately preserve it in district court, an appellate court may still grant relief if the appellant establishes plain error; but Defendants have not argued plain error on appeal, so they have waived the issue. *See Rumsey*, 944 F.3d at 1275.

For the above reasons, we reject Defendants' challenges to the decision in *DiTucci I*.

### b. Defendants' Motion to Reconsider (*DiTucci II*)

"We review the district court's denial of the motion to reconsider for abuse of discretion." *Elephant Butte Irrigation Dist. of N.M. v. U.S. Dep't of the Interior*, 538 F.3d 1299, 1301 (10th Cir. 2008). A district court abuses its discretion when its ruling is "arbitrary, capricious, whimsical, or manifestly unreasonable." *SEC v. GenAudio Inc.*, 32 F.4th 902, 937 (10th Cir. 2022) (internal quotation marks omitted). It "necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the

law or on a clearly erroneous assessment of the evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014). Defendants make four arguments that the district court erred by denying their motion for reconsideration in *DiTucci II*. We are not persuaded.

As noted above, two of these arguments—one based on a traditional-equitable-estoppel theory, and the other on a privity theory—were not raised until Defendants' motion for reconsideration. "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion for reconsideration "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* Yet that is precisely what Defendants tried to do here; their original motion to compel arbitration could have argued traditional equitable estoppel and privity, which had been recognized by Indiana courts well before the motion. *See Money Store*, 849 N.E.2d at 547 ("The party claiming equitable estoppel must show its (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." (internal quotation marks omitted)); *Isp.com LLC v. Theising*, 805 N.E.2d 767, 774 (Ind. 2004) ("An arbitration clause, like any other contract, binds the parties to the agreement and those in privity."). Noting that "*Doe II* did not announce a new rule for either theory,"

13

the district court acted within the permissible bounds of its discretion by denying the motion to reconsider those issues. *DiTucci II*, 2021 WL 4217332, at \*2.

Defendants counter that "[p]rior to *Doe II*, no Indiana state court opinion had held, or even considered, whether 'traditional estoppel' applied in the context of a non-signatory seeking to enforce an arbitration agreement." Aplts. Reply Br. at 3. As support, Defendants rely on the portion of the Indiana Court of Appeals opinion in *Reed* that adopts federal equitable estoppel in the arbitration context—a portion that consists primarily of a block quote of the Eleventh Circuit's opinion in *MS Dealer*. *See Reed*, 969 N.E.2d at 628. The first sentence of the block quote is: "'Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances.'" *Id.* (quoting *MS Dealer*, 177 F.3d at 947). From this single sentence, Defendants infer that before *Doe II* these were the *only* equitable-estoppel theories that a nonsignatory could bring under Indiana law to compel arbitration. We think that inference is not a reasonable one. Traditional equitable estoppel has been firmly ensconced in Indiana law. The Indiana Supreme Court has described equitable estoppel as one of the general "principles of equity." *Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990) (internal quotation marks omitted). It is available to a party "where, without its aid, injustice might result." *Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1167 (Ind. 1989) (internal quotation marks omitted); *cf. State ex rel. Root v. Cir. Ct. of Allen Cnty.*, 289 N.E.2d 503, 507 (Ind. 1972) (In Indiana, "a court of general jurisdiction has inherent equity power unless a statute expressly or impliedly provides otherwise."). Defendants have not offered any reason, nor does any occur to

14

us, why this doctrine should be excluded from the arbitration realm. A better explanation of the quoted language in *Reed* is that the court was simply expounding two alternatives when traditional equitable estoppel would not apply. (The partial dissent in *Reed* explained why traditional equitable estoppel did not apply on the facts of the case, *see Reed*, 969 N.E.2d at 629–30 (Barnes, J., concurring in part and dissenting in part), and the prevailing majority made no attempt to suggest otherwise.)[6]

Similarly, Defendants assert that "[p]rior to *Doe II*, there was no Indiana case law holding that a non-signatory could compel arbitration because they were in privity with a signatory." Aplts. Reply Br. at 5. But attorneys do not need a holding to feel comfortable being the first to invoke a traditional doctrine in a context plainly encompassed by the doctrine. And there was even less need for courage to make a privity argument in this case because the State's highest court had endorsed such a claim in dictum. *See Isp.com LLC*, 805 N.E.2d at 774 ("An arbitration clause, like any other contract, binds the parties to the agreement and those in privity.").[7] In short, Defendants have not shown that the district court abused its discretion by declining to

---

[6] We also note the unlikelihood that traditional equitable estoppel would assist Defendants in this case. They do not show, or even suggest, that Plaintiffs in any way misled or induced them into believing that Ms. Parkin could invoke the arbitration clause. *See Phar-Crest Land Corp. v. Therber*, 244 N.E.2d 644, 647 (Ind. 1969) (estoppel arises "if the conduct of the party has been knowingly such as would make it unconscionable on his part to deny what his conduct had induced another to believe and act upon in good faith and without knowledge of the facts" (internal quotation marks omitted)).

[7] We further note that the merits of Defendants' privity argument is questionable. In the contract context, "[p]rivity is found if a non-party holds a mutual or successive relationship with the party with regard to property or that their interests are so identical as to represent the same legal right." *Isp.com LLC*, 805 N.E.2d at 774.

15

consider the merits of Defendants' belated traditional-estoppel and privity arguments, both of which "could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012.

Next, we turn to Defendants' argument that the Indiana Court of Appeals decision in *Medical Realty* establishes that the Policy's arbitration clause permits First American to "compel arbitration of [Plaintiffs'] claims against Ms. Parkin." Aplts. Br. at 26. The question in *Medical Realty* was whether a general contractor constructing a hospital could compel its subcontractor to arbitrate with the hospital its disputes regarding the project. As in this case, the language of the subcontract's arbitration clause was broad, covering "any of [the subcontractor's] claims asserted in a timely notice and any claims asserted by [the general contractor]." 928 N.E.2d at 875. Defendants' motion for consideration in essence reads *Medical Realty* to say that when an arbitration clause describes arbitrable matters in terms broad enough to encompass a dispute with a nonsignatory, then a signatory can compel another signatory to arbitrate the dispute with the nonsignatory. But the breadth of the language in the arbitration clause was only one factor in the court's analysis. The opinion also makes clear that a court will not require a signatory to an arbitration agreement to arbitrate a dispute with a nonsignatory unless the party has "agreed to arbitrate" with the nonsignatory. *Id.* at 874. Therefore, the *Medical Realty* court looked carefully at the surrounding circumstances, particularly the contracts between the parties, before concluding that the general contractor could require the subcontractor to arbitrate its dispute with the hospital. The court noted that the subcontract between the general

16

contractor and the subcontractor incorporated by reference the general contractor's contract with the hospital, which had its own arbitration clause, *see id*. at 873; and the subcontract required the subcontractor to give the general contractor timely notice of any claim "against the Contract, its surety, the Architect, or the [hospital]," or the claim would be invalid against not only the general contractor, but also the hospital, *see id.* at 874 (internal quotation marks omitted). The Policy here has no analogous provisions. Given the significant difference in the context of the two cases—the relationship between an insured and an insurer is quite unlike that between a general contractor and a subcontractor working on the same construction project—and in light of clearly distinguishable contractual provisions, we do not think the district court abused its discretion by declining to reconsider its interpretation of the Policy's arbitration provision.

Defendants' final argument in the motion to reconsider was that the Policy's incorporation-by-reference of the ALTA Rules (which in turn incorporate the AAA Rules) was "proof [that the parties] intended to arbitrate questions of arbitrability." Aplts. App. at 673. Once again, however, Defendants could have made this arbitration-of-arbitrability argument in their briefing on the motion to compel. They claim that the issue was not available earlier, but there was no impediment to their making the argument in their motion to compel. They simply chose to ask *the district court* to decide the issue of arbitrability when they could have asked for the issue to be referred to the arbitrator. Raising the issue for the first time at the end of their motion for reconsideration's discussion of *Medical Realty* did not impose any obligation on the

17

district court to address it. "We generally decline to consider the merits of arguments that a party raises for the first time in a motion to reconsider, where the district court refrained from reaching the merits of such arguments in denying the motion." *Dutcher v. Matheson*, 840 F.3d 1183, 1203 (10th Cir. 2016). We likewise decline to do so here.[8]

## III.    CONCLUSION

We **AFFIRM** the district court's judgments.

Entered for the Court


Harris L Hartz
Circuit Judge

---

[8] We recognize that this argument may have more merit than the other arguments raised in the motion for reconsideration. We have held that an arbitration clause's incorporation of arbitration rules containing language "substantively identical to AAA [Commercial] Rule 7," *Belnap*, 844 F.3d at 1282 n.6 (addressing JAMS Rule 8(c)), was "clear and unmistakable" evidence of the parties' "intent to delegate questions of arbitrability to an arbitrator," *id.* at 1279. But unsettled questions regarding which jurisdiction's law governs (federal or Indiana), *see Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018) (reaching the same result under both state and federal law), and the effect of possible carve-out language in the arbitration provision, *cf. Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 278–84 (5th Cir. 2019), convince us that this is not the sort of clear-cut error that would suggest the need for appellate correction despite lack of preservation.